## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Robert Davis, Michael Feltz,
and Mark Johns,
individually and on behalf of all
similarly situated individuals,

Case File No. 09-237

**FIRST AMENDED CLASS ACTION
COMPLAINT AND JURY DEMAND**

Plaintiffs,

v.

SOH Distribution Company, Inc.

Defendant.

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, on behalf of themselves and others similarly situated, by and through their undersigned counsel, file this amended Complaint, and in support thereof state and aver as follows:

## NATURE OF ACTION

1.    This is a Class Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a Class of employees of Defendant, for violations of, *inter alia*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL"), the Pennsylvania Minimum Wage Act, 43 P.S. § 333.01 *et seq.* ("MWA"), as well as other rights, obligations, privileges and benefits owed to the Class by Defendant.

2.    The Class consists of Defendant's drivers employed in Illinois, whom Defendant has improperly misclassified as, "independent contractors," but

who are, in actuality, "employees" of Defendant under both common and statutory law.

3.    This Action challenges both the misclassification of these workers and Defendant' denial to Plaintiffs and the Class of the rights, obligations, privileges and benefits owed to them as employees.

4.    Plaintiffs bring this action on behalf of themselves and other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs and the other similarly situated individuals are individuals who were or are employed by Defendant as "distributors" and/or "independent contractors" and who delivered food products distributed by Defendant to retailers in Illinois.

## PARTIES

5.    Plaintiff Robert Davis is a resident of the County of Cook, State of Illinois. Plaintiff Michael Feltz and Plaintiff Mark Johns are residents of DuPage County, State of Illinois.

6.    Defendant SOH Distribution Company, Inc. is a Delaware corporation ( "Defendant." SOH Distribution Company, Inc. has its principal place of business in the City of Hanover, County of York, State of Pennsylvania.

7.    Snyder's of Hanover, Inc., manufactures and distributes snack food products in, *inter alia,* Illinois. Defendant SOH Distribution Company, Inc. employs local delivery drivers and/or distributors all of whom, at Snyder's of Hanover, Inc.'s direction and control, performs product delivery, in *inter alia,*

2

Illinois, to local retailers of snack food products manufactured and/or distributed by Snyder's of Hanover, Inc.

8.    Like all Members of the Class, Plaintiffs previously worked or work as delivery drivers in Illinois for Defendant and were misclassified as independent contractors.  Plaintiffs performed product delivery to local retailers of snack food products manufactured and/or distributed by Defendant.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) in that this is a class action, and the matter in controversy exceeds the sum of five million dollars ($5,000,000.00) exclusive of interest and costs, and members of the Class are citizens of a state different from Defendant.

10.    Venue is proper in this district because Defendant's principal placeof business is  located in the city of Hanover, County of York, and as such, reside within this district.

## CLASS ACTION ALLEGATIONS

11.    This action has been brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of Plaintiffs and all others currently and formerly employed by Defendant as employees within the definition of "employee" in the common and statutory law, but whom, similar to the named Plaintiffs, are or were erroneously classified as "independent contractors."  Occupations or jobs in which Class Members worked or work

include delivery drivers, distributors, and/or independent operators. The Class is specifically defined as follows:

> All individuals who worked for Defendant SOH Distribution Company, Inc., in Illinois, during the applicable limitations period as delivery drivers and/or distributors and/or independent operators and who were classified as "independent contractors" and thereby deprived of various protections under Pennsylvania and/or Illinois law.

12.    Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class Members is unknown to Plaintiffs. However, upon information and belief, Plaintiffs believe it is in excess of 100. The true number of Class Members is likely to be known by Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail and by published notice.

13.    There are numerous questions of law and fact common to Plaintiffs and the Class, and those questions predominate over any questions that may affect individual Class Members, and include the following:

> a.    whether Plaintiffs and the Class are employees of the Defendant;
>
> b.    whether Defendant has violated the rights of Plaintiffs and the Class under the Pennsylvania Wage Act and Collection Law, 43 P.S. § 2601.1 *et seq.*;
>
> c.    whether Defendant has violated the rights of the Plaintiffs and the Class under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq.*;
>
> d.    whether Plaintiffs and the Class are entitled to injunctive relief prohibiting Defendant from making the deductions from the

wages of Plaintiffs and the Class which are not authorized by law;

e. whether Plaintiffs and the Class are entitled to an accounting by Defendant of all hours worked on behalf of Defendant, all wages paid by Defendant, all deductions made from wages made by Defendant and the bases of all such deductions;

f. whether Plaintiffs and the Class are entitled to declaratory relief declaring that they are employees of Defendant;

g. whether Plaintiffs and the Class are entitled to injunctive relief requiring Defendant to convey to the Class the rights, privileges and benefits of employees;

h. whether the Defendant has been unjustly enriched at the expense of the Plaintiffs and the Class;

i. whether Plaintiffs and the Class are entitled to certain types of employee compensation and benefits because they are employees of Defendant as defined by common and statutory law, even though Defendant has misrepresented to Plaintiffs and the Class their employment status;

j. whether Plaintiffs and the Class has been misclassified as independent contractors pursuant to Defendant' distributor agreements;

k. whether Defendant unlawfully failed to provide worker's compensation insurance benefits and unemployment insurance benefits to Plaintiffs and the Class in violation of Pennsylvania and/or Illinois law; and

l. whether Defendant intentionally and/or negligently misrepresented to Plaintiffs and the Class they seek to represent their true employment status and thereby induced them to incur substantial expense and reliance on such representations.

14.    The named Plaintiffs are adequate representatives of the Class because they were treated in the same manner as other Class Members by Defendant and  have been damaged by this treatment in the same manner as other

Class Members by their exclusion from employee compensation programs, plans and agreements, and employee benefit plans and rights.

15.    The Plaintiffs' claims are typical of the members of the Class. Plaintiffs are informed and believe that, like other delivery drivers and/or distributors, Plaintiffs were misclassified as "independent contractors," while actually being statutory and common law employees, and therefore deprived the protections of employee status under Pennsylvania and/or Illinois law. Plaintiffs had the same duties and responsibilities as other Class Members, and were subject to the same policies, practices, and the same or substantially similar Distributor Agreement.

16.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with experience in complex wage and hour, employment, and class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the Class.

17.    The claims of the named Plaintiffs are identical to the claims of other members of the Class. The named Plaintiffs share the same interests as other members of the Class in this action because, like other Class Members, they were misclassified and suffered financial loss of thousands of dollars due to Defendant' wrongful misclassification. All members of the Class have been injured by the same actions of Defendant and in the same manner.

18.    Defendant has refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive and declaratory relief for this Class as a whole.

19.    Since Defendant continues to misclassify all of its drivers *inter alia* in Illinois as "independent contractors", the prosecution of separate actions by individual Class Members will create a risk of varying adjudications.

20.    A Class Action is the only realistic method available for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged herein.  Were each individual Class Members required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings that would be contrary to the interest of justice and equity.

21.    A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, the common questions will predominate, and there will be no unusual manageability issues.

## FACTS GIVING RISE TO THE CAUSES OF ACTION

22.    Defendant is a corporation whose business consists of food product delivery and distribution to retail customers, using a centralized network of communication, sales, and sorting facilities integrating Class Members into that existing network of operations.  Defendant hired Plaintiffs to deliver food products

7

to retailers based on times, locations, and for amounts determined solely by Defendant.

23.    In the past, Snyder's of Hanover, Inc., employed delivery drivers and/or distributors as "employees" and not independent contractors, thus providing those drivers with the protections and benefits of employee status under Pennsylvania and/or Illinois law.

24.    In or around 2001, Snyder's of Hanover, Inc. formed Defendant SOH Distribution Co., Inc. SOH Distribution Co., Inc. then entered into contractual employment agreements with many of the same drivers and/or distributors that were previously classified as employees. The employment agreements classified the drivers and/or distributors as "independent contractors" and denied them the protections of employee status under Pennsylvania and/or Illinois law, even though these same drivers had previously been classified as "employees."

25.    Defendant employs hundreds of delivery drivers to deliver its food products throughout the United States. As a condition of employment, each delivery driver is required to sign a form contract entitled "Distributor Agreement," that mischaracterizes each driver as an "independent contractor." The Distributor Agreement conceals the true nature of the relationship between Defendant and its drivers; that of employer and employee.

26.    Each delivery driver must sign a "Distributor Agreement," and addenda thereto, as a mandatory condition of employment. The Distributor

Agreement between each member of the Class and Defendant is the same in all

material respects. The Distributor Agreement between Plaintiffs and Class

Members with Defendant contains the same material terms, with only a few minor

and insubstantial differences. See sample Distributor Agreements attached

collectively as Exhibit "A".

27.     The Distributor Agreement contains various statements purporting to

classify Plaintiffs and Class Members as independent contractors. At the same

time, the Distributor Agreement retains to the company, *inter alia*, the right to

assign delivery stops to each driver, the right to temporarily or permanently

transfer portions of any route to another with or without compensation, the right to

add sales areas or accounts to a driver's territory, the right to remove sales areas or

accounts from a driver's territory, the right to control the driver's profit margins

for Defendant's national accounts, the right to handle customer complaints against

the drivers and to take disciplinary action, the right to limit assignability of the

contract, the right to limit the business entities which may be party to the contract,

the right to withhold pay for certain specified expenses, the right to require

purchase of specified insurance and numerous other purchases by drivers, the right

to require completion of specified paperwork, the right to apply trademarks and

decals to driver's sales vehicles, the right to unilaterally terminate the Agreement

for failure to maintain "satisfactory sales and service," greater Agreement

termination rights than those provided to drivers, the right to be indemnified by the

9

driver, the right to unilaterally vary the standards, guidelines, and operating procedures and requirements of drivers, and other rights reserved to Defendant.

28.     The Distributor Agreement is and at all relevant times has been a contract of adhesion, drafted exclusively by Defendant and/or its legal counsel, with no negotiation with drivers, who are required to sign the Distributor Agreement as a condition of employment.  Plaintiff and Class Members are required to sign the form contract as is, without any changes made to the terms contained therein.  The Distributor Agreement is and at all material times has been unlawful, unconscionable and fraudulent in form and effect.

29.     Defendant maintains compensation and benefit plans, agreements and programs available to persons who are "employees" of Defendant.  Upon information and belief, the benefit plans include: Health Benefit Plan, Life Insurance Plan, Short-term and Long-term Disability Plans, Accidental Death & Dismemberment and Survivor Income Plan, Employee Stock Purchase Plan, Business Travel Accident Plan, and Retirement and 401(k) Savings Plans.  In addition, employees of Defendant receive other compensation programs, plans, rights, and benefits, including vacation, holidays, sick leave, and other types of paid leave.

30.     Plaintiffs, and Class Members, were denied the accoutrements of employment, including, but not limited to:

        a.  wages;

        b.  holiday pay;

    c.  workers' compensation;

    d.  unemployment insurance;

    e.  contributions to Defendant's retirement plan;

    f.  income tax withholding; and

    g.  meal, break and rest periods.

31.    Plaintiffs and Plaintiff Class Members have been excluded from the foregoing compensation plans and programs and benefit plans for all or a portion of their employment at Defendant due to their misclassification as non-employees.

32.    Plaintiffs and Plaintiff Class Members have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant requires them to purchase under the contract.

33.    Plaintiffs, and Class Members, were required to pay Defendant's operating expense, all of which should have been paid by Defendant, including, but not limited to:

    a.  delivery vehicle purchase, lease or rental;

    b.  various insurances, including vehicle insurance and work accident insurance;

    c.  delivery vehicle maintenance and repairs;

    d.  purchase and maintenance of logos and uniforms;

    e.  fuel;

    f.  the costs of product loss, product return, and product expiration; and,

g. "business support," including equipment necessary to transact business.

34. Despite Defendant's control over virtually all material aspects of the employment relationship, and despite the unequivocal command of applicable statutes and case law to the effect that workers such as Plaintiffs are entitled to the protection due employees under Pennsylvania and/or Illinois law, Defendant misclassified and continues to misclassify its drivers as independent contractors. As a result, these drivers are deprived of the rights and protections guaranteed by Pennsylvania and/or Illinois law to employees, and they are deprived of employer-financed workers' compensation coverage and unemployment insurance benefits.

35. The terms and conditions of drivers' Distributor Agreements require these drivers to purchase, operate and maintain expensive trucks for Defendant's exclusive benefit and to work under other unlawful conditions. Defendant's mischaracterization of its drivers as independent contractors, the concealment and/or non-disclosure of the true nature of the relationship between Defendant and its drivers and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful and fraudulent business practice by Defendant which this Court should enjoin.

## COUNT I
## PENNSYLVANIA MINIMUM WAGE ACT
### 43 P.S. § 333.01 *et seq.*

36.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

37.    The MWA provides, in relevant part, as follows:

> Every employer shall pay to each of his employees wages for all hours worked at a rate of not less than [federally mandated minimum wage].

43 P.S. § 333.104(a).

38.    Plaintiffs and the Class are employees of Defendant within the meaning of the MWA and, as such, are entitled to the benefits of the MWA's minimum wage requirements.

39.    Defendant is an employer within the meaning of the MWA.

40.    The conduct described above and throughout the Complaint regarding the Defendant's misclassification of delivery drivers as "independent contractors," Defendant's exercise of supervision and control over the drivers and improper deductions from their pay were conducted in the Commonwealth of Pennsylvania in violation of Pennsylvania's MWA.

41.    Pennsylvania's MWA applies to the claims of all Class Members because the conduct which constitutes violations of the MWA by the Defendant occurred within the Commonwealth of Pennsylvania.  Moreover, the Distributor Agreement signed by Plaintiffs and all Class Members were prepared, negotiated and entered into in Pennsylvania.

42.    While working for Defendant, each delivery driver is required to pay for various operating expenses, which are properly the expenses of Defendant, including but not limited to, product loss and product return, and vehicle expense and insurance claims in violation of the MWA.

43.    Each delivery driver is obligated to pay for such expenses and the cost of such expenses are not reimbursed in any way by Defendant.

44.    In calculating delivery drivers' wages, no deduction or credit is made for the cost of the expenses which each delivery driver is required to pay. The costs of such expenses, however, when deducted or credited against each employee's weekly wages during the week in which the purchases are made, has, at times, resulted in such employee being paid less than the appropriate minimum wage under Pennsylvania and/or Illinois Law.

45.    Plaintiffs and Class Members have not expressly and freely given written consent to such deductions, and these deductions are not made in response to a valid wage assignment or deduction order.

46.    Defendant has withheld said funds unlawfully without providing Plaintiffs and Class Members with advance notice of the amounts, reasons or documentation to justify such deductions and absent any lawfully sufficient reason for such conduct.

47.    Defendant's uniform policy of requiring its delivery drivers to pay for various operating expenses which were properly the expenses of Defendant, while not reimbursing the delivery drivers for such payments, and not crediting

14

such expenditures against employees' wages for purposes of calculating minimum wages, represents and results in violations of the MWA's minimum wage requirements.

48.     Alternatively, Plaintiffs seek to recover for Defendant's unlawful deductions from their and Class Members' wages under the Wage Act of Plaintiffs' home state or residence.  Specifically, Defendant has unlawfully withheld monies from the compensation earned by Plaintiffs and Class Members for business expenses of Defendant, including but not limited to, product loss and product return, and vehicle expenses and insurance claims in violation of Illinois law.

49.     Plaintiffs and other members of the Class have been damaged as a proximate result of Defendant's violation of the wage acts and laws and have suffered, actual, ascertainable losses by virtue of Defendant's misclassification as independent contractors and illegal deductions from their wages.

50.     As a consequence of Defendant's employment practices regarding its delivery drivers, Plaintiffs and the Class were denied statutory minimum wages.

## COUNT II
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### 43 P.S. § 260.1 *et seq.*

51.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

52.     The WPCL provides, in relevant part, as follows:

15

> Every employer shall pay all wages, other than fringe benefits and wage supplements, due to employees on regular pay days designated in advance by the employer…all wages, other than fringe benefits and wage supplements, earned in any pay period shall be due and payable within the number of days after the expiration of said pay period as provided in a written contract of employment or, if not so specified, within the standard time lapse customary in the trade or within fifteen days from the end of each pay period. The wage shall be paid in lawful money of the United States or check, except that deductions provided by law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employer, may be made…

43 P.S. § 260.3.

53.   Plaintiffs and the Class are employees of Defendant within the meaning of the WPCL and, as such, are entitled to timely payment of wages due to them.

54.   Defendant is an employer within the meaning of the WPCL.

55.   The conduct described above and throughout the Complaint regarding the Defendant's misclassification of delivery drivers as independent contractors, Defendant's exercise of supervision and control over the drivers and improper deductions from their pay were conducted in the Commonwealth of Pennsylvania in violation of Pennsylvania's WPCL.

56.   Pennsylvania's WPCL applies to the claims of all Class Members because the conduct which constitutes violations of the WPCL by the Defendant occurred within the Commonwealth of Pennsylvania. Moreover, the Distributor Agreement signed by Plaintiffs and all Class Members was prepared, negotiated and entered into in Pennsylvania.

57.    Defendant's policy of deducting, either directly or by a separate transaction, amounts in the wages of Plaintiffs and the Class for operating expenses which are properly the obligation of Defendant as described above, results in violation of WPCL.

58.    Plaintiffs and the Class have entered into a Distributor Agreement with Defendant pursuant to which Plaintiffs and the Class are to receive certain wages and compensation for their work as delivery drivers for Defendant.

59.    Defendant's deduction from wages due to Plaintiff and the Class are not authorized deductions within the meaning of the WPCL and, upon information and belief, have not been authorized by the Pennsylvania Department of Labor and Industry.

60.    Plaintiffs and Class Members have not expressly and freely given written consent to such deductions, and these deductions are not made in response to a valid wage assignment or deduction order.

61.    Defendant has withheld said funds unlawfully without providing Plaintiffs and Class Members with advance notice of the amounts, reasons or documentation to justify such deductions, and absent any lawfully sufficient reason for such conduct.

62.    Any consent or agreement by Plaintiffs and the Class relayed to the aforesaid deductions from their wages is unenforceable as contrary to public policy, as set forth in the WPCL.

63.    Defendant's uniform policy of requiring its delivery drivers to pay for various operating expenses which were properly the expenses of Defendant, while not reimbursing the delivery drivers for such payments, and not crediting such expenditures against employees' wages for purposes of calculating minimum wages, represents and results in violation of the WPCL.

64.    Alternatively, Plaintiffs seek to recover for Defendant's unlawful deductions from their and Class Members' wages under the Wage Act of Plaintiffs' home state or residence.  Specifically, Defendant has ve unlawfully withheld monies from the compensation earned by Plaintiffs and Class Members for business expenses of Defendant, including but not limited to, product loss and product return, and vehicle expenses and insurance claims in violation of Illinois law.

65.    Plaintiffs and other members of the Class have been damaged as a proximate result of Defendant's violation of the wage acts and laws and have suffered, actual, ascertainable losses by virtue of Defendant's misclassification as independent contractors and illegal deductions from their wages.

66.    As a consequence of Defendant's employment practices regarding its delivery drivers, Plaintiffs and the Class were denied statutory minimum wages.

## COUNT III
## DECLARATORY RELIEF

67.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

68.    An actual controversy has arisen between Plaintiffs and Class

Members, and Defendant, relating to the following matters:

    a.  Whether Defendant has unlawfully misclassified Plaintiffs and
        Plaintiff Class Members as independent contractors and has thus
        denied Plaintiffs and Class Members of the common benefits of
        employee status, such as:

          i.  wages;

         ii.  holiday pay;

       iii.  workers' compensation;

       iv.  unemployment insurance;

        v.  contributions to Defendant's retirement plan;

       vi.  income tax withholding; and

     vii.  meal, break and rest periods.

    b.  Whether Defendant has unlawfully failed to pay benefits and
        compensation owing in a timely manner to Plaintiffs and Class
        Members whose employment with Defendant ended, as required
        by Pennsylvania and/or Illinois law.

    c.  What amounts Plaintiffs and Class Members are entitled to
        receive in compensation and benefits.

    d.  What amounts Plaintiffs and Class Members are entitled to
        receive in interest on unpaid compensation due and owing.

    e.  What amounts Plaintiffs and Class Members are entitled to
        receive from Defendant in waiting time penalties.

69.    Plaintiffs and Class Members further seek entry of declaratory

judgment in their favor which declares Defendant's practices, as heretofore

alleged, to be unlawful and which provides for recovery of all sums determined by

this Court to be owed by Defendant, and each of them, to Plaintiffs and Class Members.

## COUNT IV
## REQUEST FOR INJUNCTIVE RELIEF

70.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

71.    Defendant will continue to misclassify Plaintiffs and Class Members as independent contractors and unlawfully deny them the common benefits of employee status.

72.    Plaintiffs and Class Members have been injured and damaged, and are threatened with injury and damages, by Defendant's continued misclassification and unlawful refusal to pay all compensation and benefits as heretofore alleged, and Plaintiffs and Class Members have no adequate remedy at law.

**73.**    Defendant has acted, and threatened to act, on grounds generally applicable to the individual members of the Class, thereby making appropriate preliminary and permanent injunctive relief enjoining Defendant and its agents from practicing unlawful practices heretofore alleged.

## UNJUST ENRICHMENT

74. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

75. Plaintiffs bring this Count V in the alternative to their claims under the WPCL and MWA. The Distributor Agreement is and at all times mentioned herein has been a contract of adhesion, drafted exclusively by Defendant and/or their legal counsel, with no negotiation with drivers who are requested to sign the Agreement as a condition of employment. Plaintiffs and the Class are required to sign the form contract as is, without any changes made to the terms contained therein. Plaintiffs and the Class had no meaningful choice about whether to accept the provisions of the Agreement and such provisions are oppressively one-sided in favor of Defendant. The Agreement is, and at all material times has been, unlawful and unconscionable in form and effect, and therefore unenforceable.

76. The Agreement is an illegal and unenforceable contact because its provisions violate the public policy of the Commonwealth of Pennsylvania and/or the State of Illinois, which is to protect employees from being denied the accoutrements of employment, as detailed herein.

77. Plaintiffs and all the Class Members were required to pay operating expenses detailed herein which were properly the expenses of Defendant.

78. Defendants were unjustly enriched by requiring Plaintiffs, and other members of the Class, to pay its operating expenses.

79.    The performance of work activities as described in this Complaint conveys a benefit to Defendant, which it has knowingly received.

80.    Defendant is not entitled to this benefit, and retaining it without paying for it would be unjust to Plaintiffs and Class Members.

81.    Consequently, Plaintiffs and Class Members are entitled to recover the reasonable value of the benefit conveyed to Defendant by the performance of the work activities as described in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following relief on behalf of themselves and all others similarly situated:

a.    For an Order certifying Plaintiffs' Class, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

b.    Entering an Order for injunctive and declaratory relief and enjoining Defendant from pursuing the policies, acts and practices described in this Complaint;

c.    Enter an Order requiring Defendant to rescind the Distributor Agreement and awarding restitution compensating Plaintiffs and the Class for the reasonable value of the benefit provided to Defendant;

d.    Enter judgment in favor of each Class Member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

e.    Award Plaintiffs reasonable attorney fees and costs;

f.    Award Plaintiffs and the Class punitive damages in an amount to be determined at trial; and

g.    Grant such other and further legal and equitable relief as this Court deems just and necessary.

## JURY DEMAND

Plaintiffs, on behalf of themselves and members of the Class, hereby demand a trial by jury on all issues so triable.

Dated: March 4, 2009

LEVIN FISHBEIN SEDRAN & BERMAN

Arnold Levin, Esquire #02280
Charles E. Schaffer, Esquire #76259
Daniel C. Levin, Esquire #80013
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4669

HALUNEN & ASSOCIATES
Clayton D. Halunen MN #219721
Charles V. Firth MN #0257825
80 South Eighth Street
1650 IDS Center
Telephone: (612) 605-4098
Fax: (612) 605-4099

**ATTORNEYS FOR PLAINTIFFS**

EXHIBIT "A"

# DISTRIBUTOR AGREEMENT – Version 1

AGREEMENT made this 28th day of July 2003, 2002, in Hanover, Pennsylvania, between SOH Distribution Co., Inc., a Delaware corporation with its offices and principal place of business located at 1250 York Street, P.O. Box 917, Hanover, York County, Pennsylvania, 17331 (hereinafter called "SOH"), and Jeff Halicky, of Chicago IL (hereinafter referred to as "Distributor").

In consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1. **Grant of Rights**

   SOH hereby grants to Distributor the right to sell and distribute certain products supplied by SOH (hereinafter called "Product" or "Products") and identified on the price list provided by SOH from time to time. SOH may at any time: (i) add a Product or remove a Product from the price list; (ii) change the ingredients, packaging, or other feature of a Product; (iii) cease manufacturing, supplying and/or distributing a Product; or (iv) change the price of a Product.

2. **Territory**

   Distributor shall be responsible for selling Products to accounts in the Territory (hereafter called the "Territory") specified in Schedule A, which is attached hereto and incorporated herein by reference. SOH may at any time add sales area or accounts to the Territory, remove sales area or accounts from the Territory, or both.

   (a)  If a change in the Territory from SOH removal of sales area or an account results in a reduction of the Distributor's average weekly sales for the Territory, SOH may make available to Distributor a Product cost reduction each week for the eight (8) weeks following such change. The amount of the cost reduction shall be determined by multiplying (A) the Distributor's average (for the prior 26 weeks) weekly sales in the area or for the account removed from the Territory; and (B) the Distributor's average (for the prior 26 weeks) gross profit margin as a percentage of his gross sales based on the suggested retail pricing. In the event the parties cannot agree on the average gross profit margin in (B), then fifteen percent (15%) shall be used in (B). The resulting cost reduction, if made available by SOH, shall be issued each week for the referenced eight (8) week period as a credit to Distributor's account with SOH.

   (b)  If Distributor fails for any reason to provide and maintain satisfactory sales and service to any sales area or to any account in the Territory, and if such failure is not cured within ten (10) days after receipt of written notice from SOH of the failure, then SOH shall have the option to remove that sales area or account from the Territory without regard to the limitations provided for in paragraph 2(a). In such event, the Territory shall be changed to reflect that removal, and Distributor shall not be entitled to receive any Product cost reduction from SOH.

3.   **Best Efforts**

Distributor shall exert its best efforts: (i) to develop the full sales potential of the Territory; (ii) to provide service to Distributor's customers on a basis consistent with good industry practice; (iii) to sell and promote the Products; and (iv) to maintain the established reputation and goodwill of the Products in the marketplace.

4.   **Facilities**

Distributor shall provide and maintain, at its own cost, such facilities and equipment as may be needed for the efficient operation of Distributor's business, including, for example, sales vehicle or vehicles. The location of warehousing facilities may be changed as jointly agreed by Distributor and SOH. Distributor is required to electronically transmit his purchase and sales transactions to SOH's IS Department in Hanover, Pennsylvania in the specific file format required by SOH. In addition, Distributor may be required to electronically transmit his sales transaction to certain customers in the DEX format required by that customer. In order to comply with this requirement, Distributor may acquire his own computer system in which case he must incur all the costs of maintaining and servicing his system plus supplies. Or, Distributor may utilize SOH's hand held computer system at the costs set forth in Paragraph 4 of the Standard Operating Guidelines.

5.   **Purchase of Products**

Distributor may submit orders for Products as determined by Distributor in accordance with SOH applicable procedures, and upon SOH acceptance of an order, SOH will use its best efforts to fill that order in accordance with SOH applicable procedures. Distributor shall pick up its order from SOH Distribution Center. It is understood that access to the Distribution Center may be changed from time to time as SOH shall determine. Notwithstanding the foregoing, SOH may make reasonable reductions in Product quantities ordered by Distributor in the event of production difficulties, Product shortages, or for other good cause. The Products will be sold to Distributor by SOH on the terms and at the prices established by SOH from time to time and set forth on the current price list.

6.   **Credit Risk**

Distributor shall exercise its own judgment in making sales to and extending credit to its customers. Distributor shall be responsible for all credit risks involved in such sales.

7.   **Payment for Products**

(a)      Distributor shall pay SOH for all Products received each week, per the prices and terms on the current price list, by Friday of the next week.

(b)      If Distributor requests central billing for a customer of Distributor or if a customer of Distributor requires central billing, SOH may provide central billing for that customer if SOH determines that the customer meets the requirements established by SOH. If SOH provides central billing for such a customer, SOH will credit Distributor's account for the amount of sales invoices

Rev. 2

2

1/02

which reflect sales made in accordance with such customer's requirements. Distributor shall mail sales invoices to SOH as required by SOH. SOH may at any time cease providing central billing for a customer of Distributor upon written notice to Distributor. Nothing in this paragraph 7 shall relieve Distributor of the obligation set forth in paragraph 9 regarding removal of Products from Distributor's customers in accordance with the coded dates on those Products.

(c)     All payments to SOH shall be by check or by electronic transfer (including pre-authorized debits). If Distributor fails to make timely payment in full of any amount owed to SOH or is otherwise in breach of this Agreement, SOH will not be required to supply Products to Distributor until Distributor has paid that amount or cured the breach.

## 8.   Return of Product

Distributor shall not be entitled to return to SOH any Products: (i) which Distributor is unable to sell; (ii) which Distributor removes from its customers in accordance with the coded dates on those Products; or (iii) which become damaged, due to any cause, after receipt by Distributor. Subject to the provisions of paragraph 19, Distributor shall be entitled to return to SOH only those Products which are damaged before receipt by Distributor, or which, because of improper manufacture, deteriorate in quality and thereby become unfit for sale prior to the coded dates on those Products.

## 9.   Unsatisfactory Sales or Service

If Distributor fails for any reason to provide and maintain satisfactory sales and service with respect to any Product and if such failure is not cured within ten (10) days after receipt of written notice from SOH of the failure, then SOH shall have the option to: (A) terminate Distributor's right to distribute said Product, without any obligation of any kind to Distributor, and SOH may thereafter make such arrangements for distribution of said Product in the Territory as SOH deems appropriate; or (B) terminate this Agreement as provided in paragraph 14(b).

## 10.   Sanitation and Product Freshness

(a)     Distributor shall comply with the sanitation requirements of all federal, state, and local laws and regulations relating to the operation of Distributor's business. If Distributor fails to comply with any of the foregoing sanitation requirements, SOH may suspend deliveries of Products to Distributor until Distributor is in full compliance with those sanitation requirements.

(b)     It is specifically understood by Distributor that the Products are perishable in nature and are marketable only for a limited period of time as specified by the coded dates on the Products. Distributor agrees that certain freshness standards must be met in order to ensure that no deterioration in the quality of the Products occurs. Accordingly, Distributor agrees to remove Products from Distributor's customers in accordance with the coded dates on those Products.

11.    **Advertising on Vehicles**

If Distributor agrees to provide advertising space satisfactory to SOH on a sales vehicle used in Distributor's operations pursuant to this Agreement, SOH will be responsible for applying SOH decals and trademarks to the sales vehicle. If SOH elects to cease using the advertising space, if Distributor ceases to use the vehicle in operations pursuant to this Agreement, or if this Agreement terminates, SOH shall remove all SOH decals and trademarks from the vehicle.

12.    **Cost of Space And/Or Authorizations**

Distributor acknowledges that fees are charged to obtain shelf space and/or authorizations for new products in certain accounts. Both SOH and Distributor recognize that acquiring additional space and new product authorizations are essential for the continued growth and profitability of both our businesses. Therefore, the parties agree to share the cost of these fees. Distributor hereby agrees to reimburse SOH for Fifty (50%) Percent of such fees, or such lessor amount as SOH may determine, payable at such time or times as SOH may require.

13.    **Trade Designations**

Distributor acknowledges that SOH and the manufacturers of the other products distributed by SOH are and shall remain the exclusive owners of the various trademarks, trade names, service mark and package designs (hereafter called "Trade Designations") which SOH or the manufacturer uses in connection with the Products. Distributor has the nonexclusive license to use the Trade Designations during the term of this Agreement but only in the manner expressly approved by SOH. Distributor shall sell Products only in the retail packages supplied by SOH. Distributor shall immediately discontinue all use of the Trade Designations upon the termination of this Agreement or the written direction of SOH. Any and all goodwill now or hereafter associated with the Trade Designations shall inure exclusively to the benefit of SOH and shall be the property of SOH.

14.    **Termination**

(a)    SOH may terminate this Agreement for a breach of this Agreement by Distributor or for other just cause by giving Distributor thirty (30) days' written notice of the breach or other just cause, except that only ten (10) days' written notice need be given for a breach of paragraphs 7 or 9. Notwithstanding the foregoing, Distributor may avoid termination under this paragraph 14(a) by curing the breach or other just cause within the applicable 30-day notice period or 10-day notice period. If Distributor fails to cure the breach or other just cause within the applicable 30-day notice period or 10-day notice period, this Agreement shall terminate immediately and without further notice to Distributor.

(b)        Notwithstanding paragraph 14(a), SOH may terminate this Agreement immediately upon written notice to Distributor (and without any right to cure by Distributor) at any time after the occurrence of any of the following:

      (i)        the insolvency of Distributor or the institution of insolvency, bankruptcy or similar proceedings by or against Distributor;

      (ii)        any dishonesty, fraudulent conduct or substantial misrepresentation in any of Distributor's dealings with SOH or with retailers, consumers, or other concerning the Products;

      (iii)        the conviction of Distributor of any offense which is punishable by imprisonment or which is a felony;

      (iv)        any actions by Distributor which cause, or in the reasonable belief of SOH are likely to cause:   (A) substantial harm to SOH business, goodwill or reputation in the Territory or elsewhere; or (B) substantial harm to Distributor's business, goodwill or reputation; or (C) substantial harm to another SOH distributor's business, goodwill or reputation;

      (v)        the cessation of operation of Distributor's business for a period of seven (7) or more consecutive days;

      (vi)        the death of Distributor; or

      (vii)        repeated breaches of this Agreement or other instances of just cause, regardless of whether those breaches or instances are cured by Distributor after notice and regardless of whether those breaches or instances are similar in nature.

(c)        Notwithstanding paragraphs 14(a) and (b), SOH may terminate this Agreement for any reason whatsoever upon one hundred twenty (120) days' written notice to Distributor.

(d)        Distributor may terminate this Agreement by giving SOH thirty (30) days written notice.

## 15.   Obligations Upon Termination

(a)        If Distributor terminates this Agreement, Distributor shall be obligated to continue operations pursuant to this Agreement for the notice period required by paragraph 14(d).

(b)        If this Agreement is terminated by either Distributor or SOH: (i) Distributor shall continue to be responsible for Products which Distributor sold to its customers; and (ii) Distributor shall return to SOH any property which belongs to SOH within five (5) days after the termination of this Agreement.

(c)        Termination of this Agreement by either Distributor or SOH shall not relieve either party of any obligation arising out of operations conducted pursuant to this Agreement prior to such termination.

## 16.   Insurance

Distributor shall obtain and keep in full force and effect during the term of this Agreement, at Distributor's expense, the insurance described herein covering Distributor's business and naming SOH as additional insured, and provide SOH with a certificate of such insurance and all renewals thereof.   The insurance shall be comprehensive, general liability insurance including automobile, personal injury, and bodily injury insurance

with minimum policy limits of $2 million in the aggregate and $1 million per occurrence and property damage insurance with policy limits in the minimum amount of $1 million per occurrence. It is specifically understood that the commercial vehicle liability insurance shall provide coverage on any vehicle which Distributor might use in operations conducted pursuant to this Agreement, regardless of whether Distributor owns such vehicle.

17. **Independent Contractor**

    (a)    The parties intend to create an independent contractor relationship between them and agree that Distributor shall be a self-employed, independent contractor for all purposes. Nothing herein shall be construed: (i) to be inconsistent with that relationship; (ii) as constituting Distributor as the partner, agent, or employee of SOH; or (iii) as authorizing Distributor, or any agent or employee of Distributor, to create or assume any obligation or liability in the name of or on behalf of SOH. Any contrary final determination by any administrative agency or court of competent jurisdiction shall entitle either party to declare this Agreement null and void.

    (b)    SOH is interested only in the results obtained under this Agreement and hereby specifically relinquishes any rights to control the manner and means by which Distributor achieves these results.

    (c)    Distributor shall hold itself out as a self-employed, independent contractor and shall not be treated as an agent or employee of SOH for any federal, state or local tax, social security, workers' compensation, or unemployment compensation purposes or for any other purpose. Distributor shall comply with all laws applicable to Distributor's business, shall obtain all appropriate licenses for that business, and shall pay all business, self-employment or other taxes applicable to Distributor and that business.

18. **Limited Warranty/Indemnification**

SOH warrants the Products sold by it to Distributor pursuant to this Agreement are as described on the packages containing such Products. SOH MAKES NO REPRESENTATION OR WARRANTY OF ANY OTHER KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS, WHETHER AS TO MERCHANTIBILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER MATTER, ANY SUCH WARRANTIES BEING HEREBY EXPRESSLY EXCLUDED AND WAIVED. SOH DOES NOT AUTHORIZE ANYONE TO MAKE NOR MAKE ANY OTHER WARRANTY EXCEPT AS STATED HEREIN.

19. **Claims**

All claims by Distributor relating to Products must be made, in writing, within ten (10) days after Distributor learns the facts upon which such claims are based but in no event later than ninety (90) days after receipt of the Products by Distributor. All claims not made in writing within the time period specified shall be deemed waived.

20. **Limitation of Remedy**

Distributor's exclusive remedy for all Product claims arising out of this Agreement shall be the replacement of the defective Products by SOH, or, at the option of SOH, return of the purchase price.

21. **Indemnification**

Distributor assumes all risk and liabilities for and agrees to protect, defend, indemnify and hold SOH and its directors, officers, employees, agents, successors and assigns harmless from and against any and all fines,

claims, costs, expenses (including attorney's fees and court costs) demands, damages, actions, causes of action and other liabilities of every kind arising or resulting directly or indirectly from Distributor's actions or omissions, the operation of Distributor's business, the use or operation of Distributor's vehicles, any breach of this Agreement by Distributor or from any attempt by Distributor to enlarge SOH warranty of the Products set forth in paragraph 18. Distributor shall notify SOH of any such matters as soon as Distributor becomes aware of them. Unless otherwise required by any applicable insurance contract, SOH shall have the exclusive right to control and direct the legal activities associated with any such action through counsel retained by it.

22. **Assignment of Agreement**

Neither this Agreement nor any rights or interests hereunder may be sold, transferred or assigned by Distributor without the prior written consent of SOH. Any purported sale, transfer or assignment thereof by Distributor without such consent shall be null and void. SOH may sell, transfer or assign this Agreement or any of SOH rights or interests hereunder upon thirty (30) days' written notice to Distributor.

23. **Business Form**

   (a)   If Distributor is a corporation, the following requirements shall apply: (i) the corporation may have no more than two (2) shareholders, one of whom must be the majority shareholder; (ii) the majority shareholder (or sole shareholder) must execute this Agreement on behalf of the corporation and must guarantee the corporation's financial obligations under this Agreement; (iii) the minority shareholder, if any, must be the spouse of the majority shareholder and may not become the majority shareholder; and (iv) each share certificate of the corporation must bear a legend which gives notice that the transfer of shares is restricted and which refers to the terms of this Agreement.

   (b)   If Distributor is an individual and desires to conduct business in corporate form, SOH will consent to Distributor's assignment of this Agreement to a corporation if the requirements of paragraph 23(a) are satisfied and if Distributor executes such documents as SOH may reasonably require in connection with such consent.

24. **Representations and Guarantees**

SOH makes no representation or guarantee regarding the sales volume or profit which Distributor may derive from business operations conducted pursuant to this Agreement. Neither party, in entering into this Agreement, has relied on any representation, warranty, or promise made by the other party or any agent thereof other than the representations, warranties, and promises contained in this Agreement.

25. **Product Recall**

Distributor shall cooperate fully and promptly with SOH, the federal Food and Drug Administration and any other governmental authority in carrying out such actions as may be requested by SOH, the federal Food and Drug Administration or such other governmental authority in connection with a Product recall, market withdrawal, Product recovery or return, or similar activity.

26. **Prior Agreements Terminated**

This Agreement terminates and cancels any existing distributorship agreement between the parties and all other prior contracts, agreements and assignments, either oral or written, between the parties with respect to the subject matter of this Agreement.

**27. Mutual Releases**

Each party, for itself and for its legal representatives, heirs, successors and assigns, hereby releases and discharges the other party and the other party's officers, directors, employees, successors and assigns from any and all claims, demands or liabilities, whether known or unknown, of any nature whatsoever, existing on the date of this Agreement. However, each party shall remain liable to the other party for any amounts due, as of the date of this Agreement, in the ordinary course of business under a prior contract or agreement between the parties.

**28. Waiver**

The failure in any one or more instances of a party to insist upon strict performance of any provision of this Agreement or to exercise any right conferred in this Agreement shall not be construed as a waiver of such provision or right, and the waiver by either party of a breach of any provision of this Agreement shall not be construed as a waiver of a subsequent breach of that provision. No waiver, except a waiver by Distributor pursuant to paragraph 19, shall be effective unless it is in writing and signed by an authorized representative of the waiving party.

**29. Remedies Cumulative**

The rights and remedies of the parties under this Agreement shall be cumulative. No right or remedy under this Agreement shall be exclusive of any other right or remedy under this Agreement or provided by law or equity.

**30. Notices**

Any notice required or permitted under this Agreement shall be in writing and shall be deemed properly given when personally delivered, twenty-four (24) hours after deposit with a national express delivery service for next day delivery, or seventy-two (72) hours after deposit in the mail, return receipt requested, first class postage pre-paid, addressed to the party to be notified at the address above stated in this Agreement or at such other address as either party may designate by written notice.

**31. Miscellaneous**

(a)  Survival. This Agreement shall be binding upon the parties hereto, their heirs, personal representatives, successors and permitted assigns.

(b)  Severability. If any provision of this Agreement is found by a court of competent jurisdiction to be legally invalid or unenforceable: (i) the validity and enforceability of the remainder of this Agreement shall not be affected; (ii) such provision shall be deemed modified to the minimum extent necessary to

make such provision consistent with applicable law; and (iii) such provision shall be valid enforceable and enforced in its modified form.

(c)  Choice of Forum. THE PARTIES AGREE THAT TO THE EXTENT ANY DISPUTES ARISE THAT CANNOT BE RESOLVED DIRECTLY BETWEEN THEM, DISTRIBUTOR SHALL FILE ANY SUIT AGAINST SOH ONLY IN THE FEDERAL OR STATE COURT HAVING JURISDICTION WHERE SOH PRINCIPAL OFFICE IS THEN LOCATED. SOH MAY FILE SUIT IN THE FEDERAL OR STATE COURT IN THE JURISDICTION WHERE SOH PRINCIPAL

OFFICE IS LOCATED OR IN THE JURISDICTION WHERE DISTRIBUTOR RESIDES OR DOES BUSINESS OR WHERE THE CLAIM AROSE. DISTRIBUTOR IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT AND WAIVES ANY OBJECTION IT MAY HAVE TO EITHER THE JURISDICTION OR VENUE OF ANY SUCH COURT.

(d)     Waiver of Jury Trial. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF THIS AGREEMENT OR ANY ACTS, OMISSIONS, TRANSACTIONS OR COURSE OF DEALING HEREUNDER.

(e)     Limitation of Claims. EXCEPT FOR CLAIMS BROUGHT BY SOH WITH REGARD TO DISTRIBUTOR'S OBLIGATION TO MAKE PAYMENT TO SOH PURSUANT TO THIS AGREEMENT, OR DISTRIBUTOR'S OBLIGATIONS TO INDEMNIFY SOH PURSUANT TO THIS AGREEMENT, ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN SOH AND DISTRIBUTOR PURSUANT TO THIS AGREEMENT SHALL BE BARRED UNLESS AN ACTION IS COMMENCED WITHIN: (i) ONE YEAR FROM THE DATE ON WHICH THE ACT OR EVENT GIVING RISE TO THE CLAIM OCCURRED OR (ii) SIX MONTHS FROM THE DATE ON WHICH DISTRIBUTOR KNEW OR SHOULD HAVE KNOWN IN THE EXERCISE OF REASONABLE DILIGENCE, OF THE FACTS GIVING RISE TO SUCH CLAIMS, WHICHEVER FIRST OCCURS.

(f)     Limitation on Damages. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING LOST PROFITS AND PUNITIVE DAMAGES.

(g)     Loss of Territory/Account. Distributor agrees not to assert any claim against SOH, any account, or any other person relating to the loss of any sales area, account or the Territory or to the manner of or change to the distribution of Products.

(h)     Ethical Requirements. Distributor shall in his dealings with his customers, suppliers and public officials, adhere to the highest standards of honesty, integrity and ethical conduct.

(i)     Captions. Articles and other captions contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of any part of this Agreement.

(j)     Number and Gender. Where the context so indicates, the masculine shall include the feminine and neuter, the singular shall include the plural and "person" shall include a corporation and other entities.

(k)     Governing Law. The validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to the conflict of laws provisions thereof.

(l)     Entire Agreement. This Agreement constitutes the entire agreement between the parties and shall not be modified except by a written document executed by Distributor and by an authorized officer of SOH.

**32.     DISTRIBUTOR'S ACKNOWLEDGEMENTS/REPRESENTATIONS**

Distributor understands and acknowledges that there are significant risks in any business venture and that the primary factor in Distributor's success or failure will be Distributor's own efforts. In addition, Distributor acknowledges that SOH and its representatives have made no representation, warranty or guaranty regarding the sales volume or profit which Distributor may derive from this Agreement or in his business operations conducted thereunder and have made no representation, warranty or guaranty to Distributor other than the matters set forth in this Agreement and that Distributor has undertaken this venture solely in reliance upon Distributor's own independent investigation of the merits of this venture.

Distributor understands and acknowledges that he, as a Distributor under this Agreement, is an independent contractor and not an employee of SOH. As such, he will not receive any benefits of the type typically provided to an employee such as worker's compensation benefits, health and welfare insurance benefits, Social Security benefits or unemployment benefits. Instead, Distributor understands and acknowledges that, to the extent desired, he will have to obtain and pay for his own health and welfare benefits and also be required to pay self-employment taxes.

Distributor understands and acknowledges that this Agreement is not a franchise agreement. This Agreement does not provide the Distributor with a franchise to distribute Authorized Products or Other Products under a marketing plan or system prescribed by SOH. The Agreement does not allow the Distributor to conduct his business under, or in any way use SOH's name or the tradenames or trademarks of any of the Authorized Products or Other Products.

Distributor also understands and acknowledges that other distributors of SOH may be granted distributor agreements at different times and in different situations and that the provisions of such agreements may vary substantially from those contained in this Agreement. Distributor's obligations hereunder may differ substantially from those of other distributors.

Distributor understands and acknowledges that SOH may, in its sole discretion, vary the guidelines and operating practices and requirements among distributors including, without limitation, those relating to the Territory, Authorized Products and Authorized Outlets. Distributor understands and acknowledges that such variations may lead to different costs and obligations among distributors.

Distributor further acknowledges and represents that each of the following statements are true and correct:

(a)     He is executing this Agreement voluntarily, and has read and understands each of its provisions; and

(b)     He has been advised to consult an attorney or certified public accountant of his choice before executing the Agreement to, among other things, review the legal and accounting requirements of being an independent businessman and to determine his tax reporting obligations.

IN WITNESS WHEREOF, SOH and Distributor have executed this Agreement as of the day and year first written above.

WITNESS:                                                     SOH DISTRIBUTION CO., INC.

_____

                                                             _____
                                                             By: Charles E. Good, Vice President

Rev. 2                                                                                    1/02

10

# DISTRIBUTOR AGREEMENT *Vusion 2*

AGREEMENT made this *28* day of February 2003, in Hanover, Pennsylvania, between SOH Distribution Co., Inc., a Delaware corporation with its offices and principal place of business located at 1250 York Street, P.O. Box 917, Hanover, York County, Pennsylvania, 17331 (hereinafter called "SOH"), and R. Michael Stocklose, of 17833 S. Oakwood Avenue, Lansing, MI 60438 (hereinafter referred to as "Distributor").

In consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.  **Grant of Rights**

    SOH hereby grants to Distributor the right to sell and distribute certain products supplied by SOH (hereinafter called "Product" or "Products") and identified on the price list provided by SOH from time to time. SOH may at any time: (i) add a Product or remove a Product from the price list; (ii) change the ingredients, packaging, or other feature of a Product; (iii) cease manufacturing, supplying and/or distributing a Product; or (iv) change the price of a Product.

2.  **Territory**

    Distributor shall be responsible for selling Products to accounts in the Territory (hereafter called the "Territory") specified in Schedule A, which is attached hereto and incorporated herein by reference. SOH may at any time add sales area or accounts to the Territory, remove sales area or accounts from the Territory, or both.

    (a)    If a change in the Territory from SOH removal of sales area or an account results in a reduction of the Distributor's average weekly sales for the Territory, SOH may make available to Distributor a Product cost reduction each week for the eight (8) weeks following such change. The amount of the cost reduction shall be determined by multiplying (A) the Distributor's average (for the prior 26 weeks) weekly sales in the area or for the account removed from the Territory; and (B) the Distributor's average (for the prior 26 weeks) gross profit margin as a percentage of his gross sales based on the suggested retail pricing. In the event the parties cannot agree on the average gross profit margin in (B), then fifteen percent (15%) shall be used in (B). The resulting cost reduction, if made available by SOH, shall be issued each week for the referenced eight (8) week period as a credit to Distributor's account with SOH.

    (b)    If Distributor fails for any reason to provide and maintain satisfactory sales and service to any sales area or to any account in the Territory, and if such failure is not cured within ten (10) days after receipt of written notice from SOH of the failure, then SOH shall have the option to remove that sales area or account from the Territory without regard to the limitations provided for in paragraph 2(a). In such event, the Territory shall be changed to reflect that removal, and Distributor shall not be entitled to receive any Product cost reduction from SOH.

which reflect sales made in accordance with such customer's requirements. Distributor shall mail sales invoices to SOH as required by SOH. SOH may at any time cease providing central billing for a customer of Distributor upon written notice to Distributor. Nothing in this paragraph 7 shall relieve Distributor of the obligation set forth in paragraph 10 regarding removal of Products from Distributor's customers in accordance with the coded dates on those Products.

(c)     All payments to SOH shall be by check or by electronic transfer (including pre-authorized debits). If Distributor fails to make timely payment in full of any amount owed to SOH or is otherwise in breach of this Agreement, SOH will not be required to supply Products to Distributor until Distributor has paid that amount or cured the breach.

## 8.  Return of Product

Distributor shall not be entitled to return to SOH any Products: (i) which Distributor is unable to sell; (ii) which Distributor removes from its customers in accordance with the coded dates on those Products; or (iii) which become damaged, due to any cause, after receipt by Distributor. Subject to the provisions of paragraph 18, Distributor shall be entitled to return to SOH only those Products which are damaged before receipt by Distributor, or which, because of improper manufacture, deteriorate in quality and thereby become unfit for sale prior to the coded dates on those Products.

## 9.  Unsatisfactory Sales or Service

If Distributor fails for any reason to provide and maintain satisfactory sales and service with respect to any Product and if such failure is not cured within ten (10) days after receipt of written notice from SOH of the failure, then SOH shall have the option to: (A) terminate Distributor's right to distribute said Product, without any obligation of any kind to Distributor, and SOH may thereafter make such arrangements for distribution of said Product in the Territory as SOH deems appropriate; or (B) terminate this Agreement as provided in paragraph 13(b).

## 10.  Sanitation and Product Freshness

(a)     Distributor shall comply with the sanitation requirements of all federal, state, and local laws and regulations relating to the operation of Distributor's business. If Distributor fails to comply with any of the foregoing sanitation requirements, SOH may suspend deliveries of Products to Distributor until Distributor is in full compliance with those sanitation requirements.

(b)     It is specifically understood by Distributor that the Products are perishable in nature and are marketable only for a limited period of time as specified by the coded dates on the Products. Distributor agrees that certain freshness standards must be met in order to ensure that no deterioration in the quality of the Products occurs. Accordingly, Distributor agrees to remove Products from Distributor's customers in accordance with the coded dates on those Products.

reputation; or (C) substantial harm to another SOH distributor's business, goodwill or reputation;

(v)       the cessation of operation of Distributor's business for a period of seven (7) or more consecutive days;

(vi)      the death of Distributor; or

(vii)     repeated breaches of this Agreement or other instances of just cause, regardless of whether those breaches or instances are cured by Distributor after notice and regardless of whether those breaches or instances are similar in nature. Accordingly, the parties agree that SOH shall not be obligated to afford Distributor the right to cure his breach on more than three (3) occasions during any consecutive twelve (12) month period and that upon any subsequent breach, SOH may terminate this Agreement.

(c)      Notwithstanding paragraphs 13(a) and (b), SOH may terminate this Agreement for any reason whatsoever upon one hundred twenty (120) days' written notice to Distributor.

(d)      Distributor may terminate this Agreement by giving SOH thirty (30) days written notice.

14.   **Obligations Upon Termination**

(a)      If Distributor terminates this Agreement, Distributor shall be obligated to continue operations pursuant to this Agreement for the notice period required by paragraph 13(d).

(b)      If this Agreement is terminated by either Distributor or SOH: (i) Distributor shall continue to be responsible for Products which Distributor sold to its customers; and (ii) Distributor shall return to SOH any property which belongs to SOH within five (5) days after the termination of this Agreement.

(c)      Termination of this Agreement by either Distributor or SOH shall not relieve either party of any obligation arising out of operations conducted pursuant to this Agreement prior to such termination.

15.   **Insurance**

Distributor shall obtain and keep in full force and effect during the term of this Agreement, at Distributor's expense, the insurance described herein covering Distributor's business and naming SOH as additional insured, and provide SOH with a certificate of such insurance and all renewals thereof. The insurance shall be comprehensive, general liability insurance including automobile, personal injury, and bodily injury insurance with minimum policy limits of $2 million in the aggregate and $1 million per occurrence and property damage insurance with policy limits in the minimum amount of $1 million per occurrence. It is specifically understood that the commercial vehicle liability insurance shall provide coverage on any vehicle which Distributor might use in operations conducted pursuant to this Agreement, regardless of whether Distributor owns such vehicle.

causes of action and other liabilities of every kind arising or resulting directly or indirectly from Distributor's actions or omissions, the operation of Distributor's business, the use or operation of Distributor's vehicles, any breach of this Agreement by Distributor or from any attempt by Distributor to enlarge SOH warranty of the Products set forth in paragraph 17. Distributor shall notify SOH of any such matters as soon as Distributor becomes aware of them. Unless otherwise required by any applicable insurance contract, SOH shall have the exclusive right to control and direct the legal activities associated with any such action through counsel retained by it.

21.    **Assignment of Agreement**

Neither this Agreement nor any rights or interests hereunder may be sold, transferred or assigned by Distributor without the prior written consent of SOH. Any purported sale, transfer or assignment thereof by Distributor without such consent shall be null and void. SOH may sell, transfer or assign this Agreement or any of SOH rights or interests hereunder upon thirty (30) days' written notice to Distributor.

22.    **Business Form**

(a)    If Distributor is a corporation, the following requirements shall apply: (i) the corporation may have no more than two (2) shareholders, one of whom must be the majority shareholder; (ii) the majority shareholder (or sole shareholder) must execute this Agreement on behalf of the corporation and must guarantee the corporation's financial obligations under this Agreement; (iii) the minority shareholder, if any, must be the spouse of the majority shareholder and may not become the majority shareholder; and (iv) each share certificate of the corporation must bear a legend which gives notice that the transfer of shares is restricted and which refers to the terms of this Agreement.

(b)    If Distributor is an individual and desires to conduct business in corporate form, SOH will consent to Distributor's assignment of this Agreement to a corporation if the requirements of paragraph 22(a) are satisfied and if Distributor executes such documents as SOH may reasonably require in connection with such consent.

23.    **Representations and Guarantees**

SOH makes no representation or guarantee regarding the sales volume or profit which Distributor may derive from business operations conducted pursuant to this Agreement. Neither party, in entering into this Agreement, has relied on any representation, warranty, or promise made by the other party or any agent thereof other than the representations, warranties, and promises contained in this Agreement.

24.    **Product Recall**

Distributor shall cooperate fully and promptly with SOH, the federal Food and Drug Administration and any other governmental authority in carrying out such actions as may be requested by SOH, the federal Food and Drug Administration or such other governmental authority in connection with a Product recall, market withdrawal, Product recovery or return, or similar activity.

Agreement shall not be affected; (ii) such provision shall be deemed modified to the minimum extent necessary to

make such provision consistent with applicable law; and (iii) such provision shall be valid enforceable and enforced in its modified form.

(c)     Choice of Forum. THE PARTIES AGREE THAT TO THE EXTENT ANY DISPUTES ARISE THAT CANNOT BE RESOLVED DIRECTLY BETWEEN THEM, DISTRIBUTOR SHALL FILE ANY SUIT AGAINST SOH ONLY IN THE FEDERAL OR STATE COURT HAVING JURISDICTION WHERE SOH PRINCIPAL OFFICE IS THEN LOCATED. SOH MAY FILE SUIT IN THE FEDERAL OR STATE COURT IN THE JURISDICTION WHERE SOH PRINCIPAL OFFICE IS LOCATED OR IN THE JURISDICTION WHERE DISTRIBUTOR RESIDES OR DOES BUSINESS OR WHERE THE CLAIM AROSE. DISTRIBUTOR IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT AND WAIVES ANY OBJECTION IT MAY HAVE TO EITHER THE JURISDICTION OR VENUE OF ANY SUCH COURT.

(d)     Waiver of Jury Trial. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF THIS AGREEMENT OR ANY ACTS, OMISSIONS, TRANSACTIONS OR COURSE OF DEALING HEREUNDER.

(e)     Limitation of Claims. EXCEPT FOR CLAIMS BROUGHT BY SOH WITH REGARD TO DISTRIBUTOR'S OBLIGATION TO MAKE PAYMENT TO SOH PURSUANT TO THIS AGREEMENT, OR DISTRIBUTOR'S OBLIGATIONS TO INDEMNIFY SOH PURSUANT TO THIS AGREEMENT, ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN SOH AND DISTRIBUTOR PURSUANT TO THIS AGREEMENT SHALL BE BARRED UNLESS AN ACTION IS COMMENCED WITHIN: (i) ONE YEAR FROM THE DATE ON WHICH THE ACT OR EVENT GIVING RISE TO THE CLAIM OCCURRED OR (ii) SIX MONTHS FROM THE DATE ON WHICH DISTRIBUTOR KNEW OR SHOULD HAVE KNOWN IN THE EXERCISE OF REASONABLE DILIGENCE, OF THE FACTS GIVING RISE TO SUCH CLAIMS, WHICHEVER FIRST OCCURS.

(f)     Limitation on Damages. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING LOST PROFITS AND PUNITIVE DAMAGES.

(g)     Loss of Territory/Account. Distributor agrees not to assert any claim against SOH, any account, or any other person relating to the loss of any sales area, account or the Territory or to the manner of or change to the distribution of Products.

(h)     Ethical Requirements. Distributor shall in his dealings with his customers, suppliers and public officials, adhere to the highest standards of honesty, integrity and ethical conduct.

(i)     Captions. Articles and other captions contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of any part of this Agreement.

(b)     He has been advised to consult an attorney or certified public accountant of his choice before executing the Agreement to, among other things, review the legal and accounting requirements of being an independent businessman and to determine his tax reporting obligations.


IN WITNESS WHEREOF, SOH and Distributor have executed this Agreement as of the day and year first written above.


WITNESS:                                              SOH DISTRIBUTION CO., INC.


_____          _____

                                                     By:  Charles E. Good, Vice President


WITNESS:                                              DISTRIBUTOR:


_____          _____

                                                     R. Michael Stocklose

# DISTRIBUTOR AGREEMENT — *Version 3*

This Distributor Agreement (this "Agreement") is made as of this 3 1st day of *March* 200*6*, in Hanover, Pennsylvania, between SOH Distribution Company, Inc., a Delaware corporation with its offices and principal place of business located at 1250 York Street, P.O. Box 6917, Hanover, York County, Pennsylvania, 17331 (hereinafter called "SOH"), and *Ronald J. Bozinovich* , of *19800 Scarth Lane Mokena IL 60448* (hereinafter referred to as "Distributor").

## WITNESSETH:

WHEREAS, SOH is a snack food distributor authorized to distribute the Snyder's of Hanover ("Snyder's) brand and various other brands of snack food products throughout an area which includes the territory hereinafter set forth; and

WHEREAS, SOH and Snyder's, over the years, have developed a reputation for quality and value which has created a strong consumer recognition and approval and continuing consumer demand for the Snyder's and other's products; and

WHEREAS, Distributor is an independent businessman operating a distribution business, with the facilities, knowledge and ability necessary for successful distribution; and

WHEREAS, Distributor desires to purchase products from SOH for distribution within a territory, as hereinafter defined, subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt of sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties mutually agree as follows:

1. **Definitions**

    (a) Product(s) – shall mean those pretzel, potato chip, corn chip, popcorn and other snack food items which are specifically identified, from time to time, on the Price List, which shall include, but are not limited to, items sold under the names and/or trademarks of Snyder's. Products shall not include vend or bulk sized products, private label products, products intended for distribution or sell as frozen products, products intended for distribution or sale to specialty outlets, specialty or seasonal products or stale or out-of-code products. From time to time, a Product may be removed from the Price List by SOH, may be changed as far as ingredients, packaging or other features, may ceased to be supplied or distributed by SOH or may have its price changed on the Price List.

    (b) Price List – shall mean the document published by SOH, from time to time, entitled "Contract Sales Retail Price List." The document will identify all Products that SOH has available, from time to time, for purchase by Distributor and the price for each Product. The Distributor hereby agrees and understands that the Price List may be changed, from time to time, by SOH upon fifteen (15) days' notice to Distributor.

    (c) Territory – shall mean the geographic area for which Distributor is granted the right to sell and distribute Products. The Territory is more specifically described on Schedule A attached hereto and made part hereof.

Service/Rev 4

(d)    Distributor – shall mean the individual or entity referred to in the introductory paragraph of this Agreement.

2.    **Independent Contractor**

(a)    Through this Agreement, the parties intend to create an independent contractor relationship between them and agree that Distributor is a self-employed, independent contractor for all purposes. Nothing herein shall be construed: (i) to be inconsistent with that relationship; (ii) as constituting Distributor as the partner, agent, or employee of SOH; or (iii) as authorizing Distributor, or any agent or employee of Distributor, to create or assume any obligation or liability in the name of or on behalf of SOH. Any contrary final determination by any administrative agency or court of competent jurisdiction shall entitle either party to declare this Agreement null and void.

(b)    SOH is interested only in the results obtained under this Agreement. The manner and means by which Distributor achieves these results shall be determined by Distributor.

(c)    Distributor shall hold itself out as a self-employed, independent contractor and shall not be treated as an agent or employee of SOH for any federal, state or local tax, social security, workers' compensation, or unemployment compensation purposes or for any other purpose whatsoever. Distributor shall comply with all laws applicable to Distributor's business, shall obtain all appropriate licenses for its business, and shall pay all business, self-employment and other taxes and fees applicable to Distributor and its business.

(d)    Nothing in this Agreement shall prevent Distributor from engaging in any other business or profession except as herein limited.

3.    **Distribution Rights**

Subject to the terms of this Agreement, SOH hereby grants to Distributor the right to sell and distribute Products in the Territory.

4.    **Changes in/Maintenance of Territory**

(a)    SOH may, at any time, add sales area or accounts to the Territory, remove sales area or accounts from the Territory, or both.

(b)    If Distributor fails for any reason to provide and maintain satisfactory sales and service to any sales area or to any account in the Territory, and if such failure is not cured within ten (10) days after receipt of written notice from SOH of the failure, then SOH shall have the option to remove that sales area or account from the Territory without regard to the limitations provided for in paragraph 4(b). In such event, the Territory shall be changed to reflect that removal, and Distributor shall not be entitled to receive any Product cost reduction from SOH.

5.    **Purchase of Products**

(a)    Distributor may submit orders for Products as determined by Distributor in accordance with SOH applicable procedures, and upon SOH acceptance of an order, SOH will use its best efforts to fill that order in accordance with SOH applicable procedures. Distributor shall pick up its order from the SOH Distribution Center, which location may be changed from time to time as SOH

shall determine. Notwithstanding the foregoing, SOH may make reasonable reductions in Product quantities ordered by Distributor in the event of production difficulties, Product shortages, or for other good cause. The Products will be sold to Distributor by SOH on the terms and at the prices established by SOH from time to time and set forth on the Price List.

(b)    All Products will be sold to Distributor absolutely and the title and risk of loss will pass to Distributor upon delivery of the Products to Distributor.

6.    **Facilities**

(a)    Distributor shall be responsible for providing and maintaining, at its own cost, such facilities and equipment as may be needed for the efficient operation of Distributor's business, including, for example, sales vehicles.

(b)    Distributor is required to electronically transmit its purchase and sales transactions to SOH's IS Department in Hanover, Pennsylvania in the specific file format required by SOH. In addition, Distributor may be required to electronically transmit its sales transactions to certain customers in the DEX format required by that customer. In order to comply with this requirement, Distributor may acquire its own computer system or Distributor may utilize SOH's hand-held computer system pursuant to the terms and conditions established by SOH.

7.    **Best Efforts**

Distributor shall exert its best efforts: (i) to develop the full sales potential of the Territory; (ii) to provide service to Distributor's customers on a basis consistent with good industry practice; (iii) to sell and promote the Products; and (iv) to maintain the established reputation and goodwill of the Products in the marketplace.

8.    **Credit Risk**

Distributor shall exercise its own judgment in making sales to and extending credit to its customers. Distributor shall be responsible for all credit risks involved in such sales.

9.    **Payment for Products**

(a)    Distributor shall pay SOH for all Products received each week, per the prices and terms on the current Price List, by Friday of the next week.

(b)    If Distributor requests central billing for a customer of Distributor or if a customer of Distributor requires central billing, SOH may provide central billing for that customer if SOH determines that the customer meets the requirements established by SOH. If SOH provides central billing for such a customer, SOH will credit Distributor's account for the amount of sales invoices which reflect sales made in accordance with such customer's requirements. Distributor shall mail sales invoices to SOH as required by SOH. SOH may at any time cease providing central billing for a customer of Distributor upon written notice to Distributor. Nothing in this paragraph 9 shall relieve Distributor of the obligation set forth in paragraph 12 regarding removal of Products from Distributor's customers in accordance with the coded dates on those Products.

(c)    All payments to SOH shall be by check or by electronic transfer (including pre-authorized debits). If Distributor fails to make timely payment in full of any amount owed to SOH or is

Service/Rev 4

3

otherwise in breach of this Agreement, SOH will not be required to supply Products to Distributor until Distributor has paid that amount or cured the breach.

(d)    To secure the payment of any indebtedness or liability of Distributor to SOH now or hereinafter arising, Distributor hereby grants and conveys to SOH a security interest in this Agreement, in all Products in Distributor's possession, in all of Distributor's accounts receivables, in all equipment and supplies in Distributor's possession and in all proceeds of the above and grants to SOH the right of a secured party under the Uniform Commercial Code. Distributor agrees to execute and deliver to SOH, from time to time at SOH's request, all documents, including financial statements, which SOH may deem necessary or proper to perfect as a first lien or encumbrance and otherwise protect the security interest created hereby including the subordination of all other liens and/or encumbrances to the security interest created herein.

## 10.    Return of Product

Distributor shall not be entitled to return to SOH any Products: (i) which Distributor is unable to sell; (ii) which Distributor removes from its customers in accordance with the coded dates on those Products; or (iii) which become damaged, due to any cause, after receipt by Distributor. Subject to the provisions of paragraph 19, Distributor shall be entitled to return to SOH only those Products which are damaged before receipt by Distributor, or which, because of improper manufacture, deteriorate in quality and thereby become unfit for sale prior to the coded dates on those Products.

## 11.    Unsatisfactory Sales or Service

If Distributor fails for any reason to provide and maintain satisfactory sales and service with respect to any Product and if such failure is not cured within ten (10) days after receipt of written notice from SOH of the failure, then SOH shall have the option to: (A) terminate Distributor's right to distribute said Product, without any obligation of any kind to Distributor, and SOH may thereafter make other arrangements for distribution of said Product in the Territory as SOH deems appropriate; or (B) terminate this Agreement as provided in paragraph 15.

## 12.    Sanitation and Product Freshness

(a)    Distributor shall comply with the sanitation requirements of all federal, state, and local laws and regulations relating to the operation of Distributor's business. If Distributor fails to comply with any of the foregoing sanitation requirements, SOH may suspend deliveries of Products to Distributor until Distributor is in full compliance with those sanitation requirements.

(b)    It is specifically understood by Distributor that the Products are perishable in nature and are marketable only for a limited period of time as specified by the coded dates on the Products. Distributor agrees that certain freshness standards must be met in order to ensure that no deterioration in the quality of the Products occurs. Accordingly, Distributor agrees to remove Products from Distributor's customers in accordance with the coded dates on those Products.

## 13.    Advertising on Vehicles

Distributor hereby agrees to permit SOH to use Distributor's sales vehicles for advertising the tradenames and trademarks of the Products. In consideration therefor, SOH will apply decals and trademarks to the sales vehicles. If SOH elects to cease using the advertising space, if Distributor ceases

Service/Rev 4

to use the vehicle in operations pursuant to this Agreement, or if this Agreement terminates, Distributor hereby agrees to remove all such decals and trademarks from the vehicle.

14.    **Trade Designations**

Distributor acknowledges that SOH, Snyder's and the manufacturers of the other products distributed by SOH are and shall remain the exclusive owners of the various trademarks, trade names, service marks and package designs (hereafter called "Trade Designations") which SOH, Snyder's or the other manufacturers use in connection with the Products.    SOH hereby provides Distributor with the nonexclusive license to use the Trade Designations during the term of this Agreement but only in the manner expressly approved in writing by SOH. Distributor shall sell Products only in the retail packages supplied by SOH. Distributor shall immediately discontinue all use of the Trade Designations upon the termination of this Agreement or the written direction of SOH. Any and all goodwill now or hereafter associated with the Trade Designations shall inure exclusively to the benefit of SOH and shall be the property of SOH.

15.    **Termination**

(a)    SOH may terminate this Agreement for a breach of this Agreement by Distributor or for other just cause, including, but not limited to, reasons related to the business and/or operations of SOH, by giving Distributor thirty (30) days' written notice of the breach or other just cause, except that only ten (10) days' written notice need be given for a breach of paragraphs 9 or 11. Notwithstanding the foregoing, Distributor may avoid termination under this paragraph 15(a) by curing the breach or other just cause, where possible, within the applicable 30-day notice period or 10-day notice period. If Distributor fails to so cure the breach or other just cause within the applicable 30-day notice period or 10-day notice period, this Agreement shall terminate immediately and without further notice to Distributor.

(b)    Notwithstanding paragraph 15(a), SOH may terminate this Agreement immediately upon written notice to Distributor and Distributor shall have no right to cure, at any time, after the occurrence of any of the following:

(i)    the insolvency of Distributor or the institution of insolvency, bankruptcy or similar proceedings by or against Distributor;

(ii)    any dishonesty, fraudulent conduct or misrepresentation in any of Distributor's dealings with SOH or with retailers, consumers, or others concerning the Products;

(iii)    the performance by Distributor of this Agreement or of any Distributor's duties and responsibilities hereunder while under the influence of alcohol or illegal drugs;

(iv)    Distributor's involvement in any activity which is unsafe or is a health hazard to the public;

(v)    the conviction of Distributor of any offense which is punishable by imprisonment or which is a felony;

(vi)    any actions by Distributor which cause, or in the reasonable belief of SOH are likely to cause:  (A) substantial harm to SOH business, goodwill or reputation in

the Territory or elsewhere; or (B) substantial harm to Distributor's business, goodwill or reputation; or (C) substantial harm to another SOH distributor's business, goodwill or reputation;

(vii)    the cessation of operation of Distributor's business for a period of seven (7) or more consecutive days;

(viii)    the death of Distributor; or

(ix)    repeated breaches of this Agreement or other instances of just cause, regardless of whether those breaches or instances are cured by Distributor after notice and regardless of whether those breaches or instances are similar in nature. Accordingly, the parties agree that SOH shall not be obligated to afford Distributor the right to cure its breach on more than three (3) occasions during any consecutive twelve (12) month period and that upon any subsequent breach, SOH may terminate this Agreement.

(c)    Notwithstanding paragraphs 15(a) and (b), SOH may terminate this Agreement for any reason whatsoever upon sixty (60) days' written notice to Distributor.

(d)    Distributor may terminate this Agreement by giving SOH thirty (30) days written notice.

## 16.    Obligations Upon Termination

(a)    If Distributor terminates this Agreement, Distributor shall be obligated to continue operations pursuant to this Agreement for the notice period required by paragraph 15(d).

(b)    If this Agreement is terminated by either Distributor or SOH: (i) Distributor shall continue to be responsible for Products which Distributor sold to its customers; and (ii) Distributor shall return to SOH any property which belongs to SOH within five (5) days after the termination of this Agreement.

(c)    Termination of this Agreement by either Distributor or SOH shall not relieve either party of any obligation arising out of operations conducted pursuant to this Agreement prior to such termination.

## 17.    Insurance

Distributor shall obtain and keep in full force and effect during the term of this Agreement, at Distributor's expense, the insurance described herein covering Distributor's business and naming SOH as additional insured, and provide SOH with a certificate of such insurance and all renewals thereof. The insurance obtained by Distributor shall be comprehensive, general liability insurance including automobile, personal injury, and bodily injury insurance with minimum policy limits of $2 million in the aggregate and $1 million per occurrence and property damage insurance with policy limits in the minimum amount of $1 million per occurrence. The automobile insurance acquired by Distributor shall provide coverage on any vehicle, which Distributor might use in operations conducted pursuant to this Agreement, regardless of whether Distributor owns, borrows or rents such vehicle. Each policy shall provide that it will not be cancelled or materially altered without the insurance company giving SOH at least ten (10) days' prior written notice before such cancellation or alteration shall become effective.

18.  **Limited Warranty**

SOH warrants the Products sold by it to Distributor pursuant to this Agreement are as described on the packages containing such Products. SOH MAKES NO REPRESENTATION OR WARRANTY OF ANY OTHER KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS, WHETHER AS TO MERCHANTIBLITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER MATTER, ANY SUCH WARRANTIES BEING HEREBY EXPRESSLY EXCLUDED AND WAIVED, SOH DOES NOT AUTHORIZE ANYONE TO MAKE, NOR DOES IT MAKE, ANY OTHER WARRANTY EXCEPT AS STATED HEREIN.

19.  **Indemnification**

Distributor assumes all risk and liabilities for, and agrees to protect, defend, indemnify and hold SOH, Snyder's and their respective officers, directors, employees, agents, affiliates, divisions, successors, predecessors, representatives and assigns harmless from and against, any and all fines, claims, costs, expenses (including attorney's fees and court costs), demands, damages, actions, causes of action and other liabilities of every kind and nature, whether in contract, tort, equity or otherwise, whether statutory or common law, arising or resulting directly or indirectly from Distributor's actions, omissions or negligence, the performance of this Agreement by Distributor and/or any of Distributor's duties or obligations hereunder, any breach of this Agreement by Distributor, the operation of Distributor's business and/or the use or operation of Distributor's vehicles. Distributor shall notify SOH, in writing, of any such matter as soon as Distributor becomes aware thereof. Unless otherwise required by any applicable insurance contract, SOH shall have the exclusive right to control and direct the legal activities associated with any such action through counsel retained by it, but at Distributor's sole cost and expense.

20.  **Assignment of Agreement**

(a)     Neither this Agreement nor any rights or interests hereunder may be sold, transferred or assigned by Distributor without the prior written consent of SOH. Any purported sale, transfer or assignment thereof by Distributor without such consent shall be null and void.

(b)     SOH may sell, transfer or assign this Agreement or any of SOH rights or interests hereunder upon thirty (30) days' written notice to Distributor. Distributor hereby consents to such assignment, agrees that such assignment shall fully and completely release SOH from any and all liability, claims or expenses hereunder and agrees, if requested to do so, to surrender this Agreement in exchange for a new agreement between Distributor and the assignee which will reflect the assignment by SOH.

21.  **Product Recall**

Distributor shall cooperate fully and promptly with SOH, the federal Food and Drug Administration and any other governmental authority in carrying out such actions as may be requested by SOH, the federal Food and Drug Administration or such other governmental authority in connection with a Product recall, market withdrawal, Product recovery or return, or similar activity.

22.  **Prior Agreements Terminated**

This Agreement terminates, supersedes and cancels all prior and existing written and/or oral contracts, agreements and/or assignments, if any, between Distributor and SOH, Snyder's, their respective officers, directors, employees, agents, affiliates, divisions, successors, predecessors, representatives and assigns

Service/Rev 4

and/or any prior, former and/or current manufacturer, distributor or supplier of the Products, relating to the subject matter of this Agreement and/or the distribution or sale of the Products.

23.    **Release**

Upon the execution of this Agreement and in consideration of the execution thereof by SOH, Distributor on behalf of itself and for its officers, directors, employees, agents, affiliates, partners, representatives, heirs, estates, successors and assigns, hereby releases, remises and forever discharges SOH, Snyder's, their respective officers, directors, employees, agents, affiliates, divisions, successors, predecessors, representatives and assigns and all prior, former and current manufacturers, distributors and suppliers of the Products (collectively the "Released Parties") from any and all claims, demands, causes of action, liabilities, costs and expenses, including, but not limited to, attorneys' fees, whether in contract, tort, equity or otherwise, whether statutory or common law, whether known or unknown, of any kind or nature whatsoever, which Distributor ever had, now has or can, shall or may have against the Released Parties, including, but not limited to, any claims, demands, causes of action, liabilities, costs and/or expenses arising out of or relating to any and/or all prior agreements, contracts and/or assignments, if any, between the Distributor and any of the Released Parties, and/or the distribution and/or sale of the Products and/or any other snack food products at any time prior to the date of this Agreement. Distributor represents and warrants that it has not assigned to any other person or entity any and/or all portions of any such claim, demand, cause of action, liability, cost and/or expense which it had, has or can, shall or may have against the Released Parties.

24.    **Waiver**

The failure in any one or more instances of a party to insist upon strict performance of any provision of this Agreement or to exercise any right conferred in this Agreement shall not be construed as a waiver of such provision or right, and the waiver by either party of a breach of any provision of this Agreement shall not be construed as a waiver of a subsequent breach of that provision. No waiver, except a waiver expressly set forth in this Agreement, shall be effective unless it is in writing and signed by an authorized representative of the waiving party.

25.    **Notices**

Any notice required or permitted under this Agreement shall be in writing and shall be deemed properly given when personally delivered, twenty-four (24) hours after deposit with a national express delivery service for next day delivery, or seventy-two (72) hours after deposit in the mail, return receipt requested, first class postage pre-paid, addressed to the party to be notified at the address above stated in this Agreement or at such other address as either party may designate by written notice.

26.    **Miscellaneous**

(a)    Survival. This Agreement shall be binding upon the parties hereto and their respective officers, directors, employees, agents, partners, heirs, estates, representatives, successors and permitted assigns.

(b)    Severability. Any provision of this Agreement which is prohibited by, or unlawful or unenforceable under, any applicable law of any jurisdiction will be ineffective as to such jurisdiction without affecting any other provision of this Agreement. To the full extent, however, that the provisions of such applicable law may be waived, they are hereby waived, to the end that this Agreement be deemed to be a valid and binding Agreement enforceable in accordance with its terms.

Also, if any provision of this Agreement is found by a court of competent jurisdiction to be invalid or unenforceable: (i) the validity and enforceability of the remainder of this Agreement shall not be affected; (ii) such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law; and (iii) such provision shall be valid, enforceable and enforced in its modified form.

(c)   Choice of Forum.  THE PARTIES AGREE THAT TO THE EXTENT ANY DISPUTES ARISE THAT CANNOT BE RESOLVED DIRECTLY BETWEEN THEM, DISTRIBUTOR SHALL FILE ANY SUIT AGAINST SOH ONLY IN THE FEDERAL OR STATE COURT HAVING JURISDICTION OVER WHERE SOH'S PRINCIPAL OFFICE IS THEN LOCATED.  THE PARTIES FURTHER AGREE THAT SOH MAY, AT ITS OPTION, FILE SUIT IN EITHER THE FEDERAL OR STATE COURT HAVING JURISDICTION OVER WHERE SOH'S PRINCIPAL OFFICE IS LOCATED OR IN THE FEDERAL OR STATE COURT HAVING JURISDICTION OVER WHERE DISTRIBUTOR RESIDES OR DOES BUSINESS OR WHERE THE CLAIM AROSE.  DISTRIBUTOR IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT AND WAIVES ANY OBJECTION IT MAY HAVE TO EITHER THE JURISDICTION OR VENUE OF ANY SUCH COURT.

(d)   Waiver of Jury Trial.  THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THIS AGREEMENT OR ARISING OUT OF THIS AGREEMENT OR ANY ACTS, OMISSIONS, TRANSACTIONS OR COURSE OF DEALING HEREUNDER.

(e)   Limitation of Claims.  EXCEPT FOR CLAIMS BROUGHT BY SOH WITH REGARD TO DISTRIBUTOR'S OBLIGATION TO MAKE PAYMENT TO SOH PURSUANT TO THIS AGREEMENT, OR DISTRIBUTOR'S OBLIGATIONS TO INDEMNIFY, HOLD HARMLESS AND/OR RELEASE SOH PURSUANT TO THIS AGREEMENT, ANY AND ALL OTHER CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN SOH AND DISTRIBUTOR PURSUANT TO THIS AGREEMENT SHALL BE BARRED UNLESS AN ACTION IS COMMENCED WITHIN: (i) ONE YEAR FROM THE DATE ON WHICH THE ACT OR EVENT GIVING RISE TO THE CLAIM OCCURRED OR (ii) SIX MONTHS FROM THE DATE ON WHICH THE PARTY RAISING THE CLAIM KNEW OR SHOULD HAVE KNOWN, IN THE EXERCISE OF REASONABLE DILIGENCE, OF THE FACTS GIVING RISE TO SUCH CLAIM, WHICHEVER FIRST OCCURS.

(f)   Further Limitation of Product Claims.  NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, ALL CLAIMS BY DISTRIBUTOR RELATING TO THE PRODUCTS MUST BE MADE, IN WRITING, WITHIN TEN (10) DAYS AFTER DISTRIBUTOR LEARNS THE FACTS UPON WHICH SUCH CLAIMS ARE BASED BUT IN NO EVENT LATER THAN NINETY (90) DAYS AFTER RECEIPT OF SUCH PRODUCT BY DISTRIBUTOR.  ALL SUCH CLAIMS NOT MADE IN WRITING WITHIN THE TIME PERIOD SPECIFIED SHALL BE DEEMED WAIVED.  FURTHERMORE, DISTRIBUTOR'S EXCLUSIVE REMEDY FOR ALL PRODUCT CLAIMS ARISING OUT OF THIS AGREEMENT OR OTHERWISE SHALL BE THE REPLACEMENT OF THE PRODUCTS BY SOH, OR, AT THE OPTION OF SOH, RETURN OF THE PURCHASE PRICE

(g)   Limitation on Damages.  NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IN NO EVENT SHALL SOH BE LIABLE TO THE DISTRIBUTOR FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL

DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST GOODWILL, LOST PROFITS, PROSPECTIVE PROFITS, ANTICIPATED SALES, PUNITIVE DAMAGES AND/OR EXPENDITURES, INVESTMENTS, COSTS AND/OR COMMITMENTS MADE OR INCURRED BY DISTRIBUTOR IN CONNECTION WITH THE BUSINESS OF DISTRIBUTOR, THE DISTRIBUTION OF THE PRODUCTS OR OTHERWISE.

(h)  Loss of Territory/Account.  Distributor agrees not to assert any claim against SOH, any account, or any other person relating to the loss of any sales area, account or the Territory or to the manner of or change to the distribution of Products.

(i)  Captions.  Articles and other captions contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of any part of this Agreement.

(j)  Number and Gender.  Where the context so indicates, the masculine shall include the feminine and neuter, the singular shall include the plural and "person" shall include a corporation and other entities.

(k)  Governing Law.  The validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to its conflict of laws or choice of law provisions.

(l)  Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter thereof and shall not be modified except by a written document executed by Distributor and by an authorized officer of SOH.

## 27. DISTRIBUTOR'S ACKNOWLEDGEMENTS/REPRESENTATIONS

Distributor understands and acknowledges that there are significant risks in any business venture and that the primary factor in Distributor's success or failure will be Distributor's own efforts.  In addition, Distributor acknowledges that SOH and its representatives have made no representation, warranty or guaranty regarding the sales volume or profit which Distributor may derive from this Agreement or in its business operations conducted thereunder and have made no representation, warranty or guaranty to Distributor other than the matters set forth in this Agreement and that Distributor has undertaken this venture solely in reliance upon Distributor's own independent investigation of the merits of this venture.

Distributor understands and acknowledges that, as a distributor under this Agreement, it is an independent contractor and not an employee of SOH.  As such, it will not receive any benefits of the type typically provided to an employee such as worker's compensation benefits, health and welfare insurance benefits, Social Security benefits or unemployment benefits.  Instead, Distributor understands and acknowledges that, to the extent desired, it will have to obtain and pay for its own health and welfare benefits and also be required to pay self-employment taxes.

Distributor understands and acknowledges that this Agreement is not a franchise agreement.  This Agreement does not provide Distributor with a franchise to distribute Products under a marketing plan or system prescribed by SOH or otherwise.  The Agreement does not allow the Distributor to conduct its business under, or in any way use, SOH's name or the tradenames or trademarks of any of the Products, except as otherwise herein provided.

Distributor also understands and acknowledges that other distributors of SOH may be granted distributor agreements at different times and in different situations and that the provisions of such agreements may vary

Service/Rev 4

substantially from those contained in this Agreement. Distributor's obligations hereunder may differ substantially from those of other distributors.

Distributor understands and acknowledges that SOH may, in its sole discretion, vary the standards, guidelines and operating practices and requirements among distributors including, without limitation, those relating to the Territory and the Products. Distributor understands and acknowledges that such variations may lead to different costs and obligations among distributors.

Distributor further acknowledges and represents that each of the following statements are true and correct:

(a)     It is executing this Agreement voluntarily, and has read and understands each of its provisions; and

(b)     It has been advised to consult an attorney or certified public accountant of its choice before executing the Agreement to, among other things, review the legal and accounting requirements of being an independent businessman and to determine its reporting obligations.

**IN WITNESS WHEREOF,** SOH and Distributor have executed this Agreement as of the day and year first written above.

WITNESS:                                            SOH Distribution Company, Inc.


_____          _____
                                                               By: Charles E. Good, Vice President

WITNESS:                                            DISTRIBUTOR:


_____          _____