**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT DAVIS, MICHAEL FELTZ, | : | Civil Action No. 1:09-CV-237 |
| MARK JOHNS and RICHARD HOZIAN, | : | |
| individually and on behalf of all similarly | : | (Consolidated) |
| situated individuals, | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SOH DISTRIBUTION COMPANY, INC., | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| CHARLEE HARGIS, individually and on | : | Civil Action No. 1:09-CV-1669 |
| behalf of all similarly situated individuals, | : | |
| Plaintiffs, | : | (Consolidated) |
| v. | : | |
| | : | |
| G&A SNACK DISTRIBUTING, INC., a/k/a | : | |
| G and A SNACK DISTRIBUTING, INC., | : | |
| SOH DISTRIBUTION COMPANY, INC., | : | |
| and DOES 1 THROUGH 50, | : | |
| | : | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... iii

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ............................................................................................ 2

        A.    Parties............................................................................................ 2
        B.    The Litigation................................................................................ 3
        C.    The Settlement ............................................................................. 4
        D.    Claims ............................................................................................ 6
        E.    Preliminary Approval ................................................................. 7

III.    SETTLEMENT ............................................................................................. 7

        A.    The Settlement Class.................................................................. 8
        B.    Terms of The Settlement Agreement ...................................... 9
        C.    Release Provisions in the Settlement Agreement................. 12
        D.    Attorneys' Fees ........................................................................... 13
        E.    Exclusion and Objection Rights................................................ 14
        F.    Enhanced Compensation for the Class Representatives ...... 14
        G.    Order Preliminarily Approving the Settlement ..................... 14
        H.    Class Notice of the Proposed Settlement ............................... 15

IV.     ARGUMENT ................................................................................................. 16

        A.    It is Appropriate to Certify the Settlement Class as a National
              Class for  Purposes of the Settlement ...................................... 16
              1.    The Elements of Rule 23(a) Are Fully Satisfied ...................... 19
                    a)    Numerosity ................................................................ 19
                    b)    Commonality ............................................................. 20
                    c)    Typicality ................................................................... 21
                    d)    Adequacy .................................................................... 23
                          (i)     The Class Has Been More Than Adequately
                                  Represented by Co-Class Counsel .................... 24
                          (ii)    The Class Representative's Interests Are Not
                                  Antagonistic to Those of the Class ................... 25
              2.    The Requirements of Rule 23(b)(3) Are Met in the
                    Settlement Context........................................................................ 26
              3.    The Requirements Necessary for FLSA Class Certification
                    Have Been Met ............................................................................... 28

B.    The Proposed Settlement is Fair, Reasonable, and Adequate
      and Should be Approved by the Court.................................................30
      1.    The Settlement is Entitled to an Initial Presumption
            of Fairness..................................................................33
      2.    The Settlement Satisfies All of the Relevant
            Criteria for Approval......................................................35
            a)    The Complexity, Expense and Likely Duration of the
                  Litigation.............................................................. 36
            b)    The Reaction of the Class to the Settlement ................................ 37
            c)    The Stage of the Proceeding and Amount
                  of Discovery Completed ............................................. 38
            d)    The Risks of Establishing Liability and Proving
                  Damages and  Maintaining the Class Action Through Trial......... 39
            e)    The Ability of the Defendants to Withstand a
                  Greater Judgment ...................................................... 40
            f)    The Range of Reasonableness of the Settlement in
                  Light of the Best Possible Recovery and in Light of
                  All of the Attendant Risks of Litigation ......................................... 42
            g)    The Notice Plan Satisfied the Requirements of the
                  Federal Rules of Civil Procedure and Due Process....................... 43

C.    Named Plaintiffs are Entitled to a Separate Award for Their Efforts................... 46

V.    CONCLUSION.......................................................................................... 49

<u>**TABLE OF AUTHORITIES**</u>

**Statutes**

29 U.S.C. §§ 201, *et seq*..................................................................... 1, 2, 9, 12, 14, 17, 29, 30, 31
California Labor Code § 2699, the California Private Attorneys General Act of 2004 ................ 10

**Federal Rules of Civil Procedure**

Rule 23 .........................................................1, 2, 14, 17, 19, 20, 21, 25, 26, 27, 29, 31, 35, 46, 47

**Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................... 16, 26, 38
*Austin v. Pa. Dept. of Corp.*, 876 F.Supp. 1437 (E.D. P. 1985) .................................................... 30
*Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ............................................................... 20, 21
*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998).................................................... 18
*Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) ........................................................... 24
*Black v. Metso Paper USA, Inc.*, 2010 U.S. Dist. LEXIS 9723 (M.D. Pa.
   Feb. 4, 2010) ..............................................................................................................................35
*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977)........................................................... 21
*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ......................................................... 31, 38
*Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp.2d 322 (E.D. Pa. 2007) ...................... 30
*Bullock v. Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) ...................................................................... 31
*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974)........................................ 31, 37
*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)........................................................... 30
*Caruso v. Celsius Insulation Resources, Inc.*, 101 F.R.D. 530, 534 (M.D. Pa. 1984) ................. 21
*Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. May 26, 2009) ................... 28
*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .............................................. 30
*Collins v. Pension Benefit Guaranty Corp.*, No. CA 88-3406-AER, 1996 WL 335346
   (D.D.C. June 7, 1996) ................................................................................................................47
*Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) .................................................. 23
*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ................................................................. 34, 42
*Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) ............... 28, 29
*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ....................................46, 47
*DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003)..................................................... 29
*Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ........................................................... 24
*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)........................................................ 31
*Equal RightsCenter v. Washington Meto Area Tr. Auth.*, 573 F. Supp.2d 205
   10 (D.D.C. 2008) .......................................................................................................................47
*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985).................................................................... 16
*Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446 (E.D. Pa 1985)................. 34
*Flannick v. First Union Home Equity Bank*, 134 F.Supp.2d 389 (E.D. Pa. 2001)....................... 19
*Garcia v. Freedom Mortg. Corp.*, 2009 U.S. Dist. LEXIS 103147 (D.N.J.
   Nov. 2, 2009)..............................................................................................................................28
*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982)......................................... 21
*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................... 30, 35, 39
*Grasty v. Amalgamated Clothing & Textile Workers Union*, 1988 WL 61742
   (E.D. Pa. June 10, 1988) ........................................................................................................... 23
*Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987).......... 23
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................................... 16

*Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978) .................................................. 26
*Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3d Cir. 1992) ..................... 21, 22
*Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979) ...................................................................... 19
*In re Aetna Inc. Sec. Litig.*, No. Civ. A. MDL1219, 2001 WL 20928
  (E.D. Pa. Jan. 4, 2001) ............................................................................................................41
*In re Agent Orange Product Liability Litigation,* 818 F.2d 145 (2d Cir. 1987) ........................... 20
*In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984) ............................ 19, 20, 21, 23
*In re Auto Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2007 WL 4570918
  (E.D. Pa. Dec. 28, 2007) .....................................................................................31, 33, 37, 46
*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979) ................................................... 16
*In re Catfish Antitrust Litig.*, 939 F. Supp. 493 (N.D. Miss. 1996) ..............................................47
*In re Cendant Corp. Litig.,* 264 F.3d 201 (3d Cir. 2001) ......................................32, 35, 37, 38, 40
*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ........................................... 36
*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
  410 F. Supp. 659 (D. Minn. 1974) ..........................................................................................34
*In re Domestic Air Transportation Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ................. 47
*In re: GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768
  (3d Cir. 1995) ................................................................. 30, 32, 33, 35, 37, 39, 41
*In re GNC Shareholder Litig.*, 668 F. Supp. 450 (W.D. Pa. 1987) .............................................. 47
*In re Graphite Electrodes Antitrust Litig.*, MDL No. 1244 (E.D. Pa. Sep. 8, 2003) ................... 47
*In re Janney Montgomery Scott LLC Fin. Consultant Litig.,* 2009 U.S. Dist. LEXIS
  60790 (E.D. Pa. July 16, 2009) ...............................................................................................28
*In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631 (E.D. Pa. 2003) ........................... 33, 37, 46
*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2008) .................................. 21
*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 84 (E.D. Pa. 2003) ................. 21
*In re Ohio Corr. Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) .......................................................46
*In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94-CV-3564, 2002 WL 188569
  (E.D. Pa. Dec. 4, 1998) .....................................................................................................46, 47
*In re Pressure Sensitive Labelstock Antitrust Litig*, 2007 U.S. Dist. LEXIS 85466 ....16, 37, 39, 44
*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283
  (3d Cir. 1998) ....................................................................16, 18, 20, 21, 23, 27, 31, 36, 37, 44
*In re: Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 202 (S.D.N.Y. 1995) .................... 16, 30
*In re: Remeron Direct Purchaser Antitrust Litig*, No. Civ. 03-0085 FSH, 2005 WL
  2230317 at 816 (D.N.J. Sept. 13, 2005) ..............................................................................31, 32
*In re Rent-Way Sec. Litig.,* 218 F.R.D. 101 (W.D. Pa 2003) .................................................. 26, 42
*In re Revco Sec. Litig.*, Nos. 851, 89CV593, 1992 U.S. Dist. LEXIS 7852
  (N.D. Ohio May 6, 1992) ...................................................................................................47, 48
*In re Telectronics Pacing Systems* 172 F.R.D. 271, 280 (S.D. Ohio 1997) ...................... 20, 21, 26
*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2003) ............. 30, 32, 33, 35, 40
*J/H Real Estate*, 951 F. Supp. 63 (E.D. Pa. 1997) ....................................................................... 47
*Jackson v. SEPTA*, 260 F.R.D. 168, 187 (E.D. Pa. 2009) ............................................................ 19
*Knell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999) .......................................................... 27
*Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978) ............................................. 19
*Lachance v. Harrington*, 965 F. Supp. 630 (E.D. Pa. 1991) ........................................................ 39
*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994) ................................................ 33
*Lazy Oil v. Witco Corp.*, 95 F. Supp.2d 290 (W.D. Pa. 1997) ..................................................... 41

*Lester v. Percudani*, 217 F.R.D. 345 (M.D. Pa. 2003) ................................................. 27

*Lockhart v. Westinghouse Credit Corp*, 879 F.2d 43 (3d Cir. 1989) ............................. 28

*Mack v. Suffolk County,* 191 F.R.D. 16, 23 (D. Mass. 2000) ....................................... 20

*Mars Steel Corp. v. Cont'l Ill. Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ........... 31

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007) ..................... 19

*Meijer, Inc. v. 3M*, 2006 WL 2382718, *9 (E.D. Pa. Aug. 15, 2006) ...................... 31, 45

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (U.S. 1950) ..................... 44

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972) ............................................................ 32

*Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001 .......... 26

*Osgood v. Harrah's Entm't, Inc*., 202 F.R.D. 115, 122 (D.N.J. 2001) ......................... 19

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005) ............................... 39

*Petruzzi's Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292 (M.D. Pa. 1995) ...... 31

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................ 44

*Plummer v. General Electric Co.*, 93 F.R.D. 311 (E.D. Pa. 1981) ............................... 29

*Reed v. United Transp. Union* , 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) ............. 23

*Ruehl v. Viacom, Inc*., 500 F.3d 375 (3rd Cir. 2007) ................................................... 28

*Safran v. United Steelworkers of America*, 132 F.R.D. 397 (W.D. Pa. 1989) .............. 26

*Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D. Ill. 1992) ........... 21

*Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979) ....................................... 21

*Serrano v. Sterling Testing Sys., Inc.*, 2010 U.S. Dist. LEXIS 44779 (E.D. Pa.
   May 7, 2010) ............................................................................................................ 32

*Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977) ...................... 20

*Sperling v. Hoffman-LaRoche*, 862 F.2d 439 (3d. Cir. 1998) ...................................... 28

*Stanislaw v. Erie Indemnity Co.*, 2009 U.S. Dist. LEXIS 13812, 2009 WL 426641
   *1 (W.D. Pa. Feb. 20, 2009) ................................................................................... 28

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) .................................. 30, 37

*Tenuto v. Transworld Systems, Inc.*, Civ. A. No. 99-4228, 2002 WL 188569
   (E.D. Pa. Jan. 31, 2002) ...................................................................................... 46, 47

*Valentino v. Carater-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................... 44

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956 (3d Cir. 1983) ................. 30, 32

*Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527 (W.D. Pa. 1994) ............................... 16

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) .................................................. 32

*Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984) ............................................ 21, 23

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) .................... 39

*Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3d Cir. 1975) ............................. 18, 23

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ..................................................... 30

*Woodard v. Fed. Ex. Freight East, Inc.*, 2008 U.S. Dist. LEXIS 11919, 250 F.R.D. 178
   (M.D. Pa. Feb. 29, 2008) ........................................................................................ 28

*Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir. Pa. 1985) ........ 45

-

Plaintiffs, Robert Davis, Michael Feltz, Mark Johns, Richard Hozian, and Charlee Hargis, individually and on behalf of all similarly situated individuals (collectively, the "Plaintiffs"), and Defendants, SOH Distribution Company, Inc. ("SOH") and G&A Snack Distributing, Inc. ("G&A") (hereinafter SOH and G&A will be collectively referred to as "Defendants"), hereby respectfully submit this Memorandum, for settlement purposes only, in support of their Joint Motion for Final Approval of a Class and Collective Action Settlement and Certification of the Settlement Class.[1]

## I.   <u>INTRODUCTION</u>

On April 30, 2010, this Court, among other things, preliminarily approved the parties' settlement, as set forth in the Settlement Agreement, and conditionally certified the Settlement Class.  Thereafter, notice was served in accordance with the Court's Order.

The parties respectfully submit that the terms of the settlement, as set forth in the Settlement Agreement, are eminently fair, adequate, and reasonable for the Settlement Class and that the requirements for final approval are fully satisfied. In addition, the Settlement Class satisfies the criteria for class certification under Rule 23 of the Federal Rules of Civil Procedure and for class and collective action certification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; and the notice to the Settlement Class members comported with due process, Rule 23 and the FLSA, both as to its content and as to the method of notice dissemination.  The parties respectfully request that this Court: (1) grant final approval of and accept and adopt the settlement, as set forth in the Settlement Agreement; (2) certify the Settlement Class and sub-classes pursuant to the provisions of Fed. R. Civ. P. 23(b)(3) and the FLSA; (3) find that the Notice of Class Action Settlement mailed to the Settlement Class

---

[1] Unless otherwise defined herein, the capitalized terms used in this Memorandum have the same meaning as defined in the parties First Amended Joint Stipulation of Class and Collective Action Settlement and Release (the "Settlement Agreement"), filed on April 14, 2010 (Dkt. 57).

members meets the requirements of the FLSA, Rule 23 and due process; (4) award attorney fees and costs, as requested in the motion submitted by Co-Class Counsel; (5) approve an enhanced award for the Settling Named Plaintiffs; (6) enter final judgment dismissing the above-captioned actions and all claims set forth therein with prejudice; and (7) authorize the Claims Administrator to make all disbursements of the Gross Settlement Sum according to the terms of the Settlement Agreement.

## II.   BACKGROUND

### A.   Parties

SOH is a Pennsylvania corporation with its principal place of business in Hanover, Pennsylvania.  SOH sells and distributes various snack food products.  As part of its operations, SOH enters into written distributor agreements with individuals and corporations for the sale and distribution of the products in various states.

G&A is a California corporation with its principal place of business in Hanover, Pennsylvania.  G&A also sells and distributes various snack food products.  As part of its operations, G&A enters into written distributor agreements with individuals and corporations for the sale and distribution of the products in various states.

The Settlement Class is made up of individuals, like the Settling Named Plaintiffs, that distribute or have distributed products sold or distributed to them by SOH and G&A.  The Settling Named Plaintiffs are residents of Illinois and California who, through written distributor agreements with SOH or G&A, distribute or have distributed products sold and/or distributed by SOH or G&A.

### B.      The Litigation

On or about October 16, 2008, Plaintiffs, Robert Davis, Michael Feltz, and Mark Johns (the "Illinois Plaintiffs"), filed a lawsuit against SOH and Snyder's of Hanover, Inc. ("Snyder's") in the United States District Court for the Northern District of Illinois, purportedly on behalf of themselves and all other individuals who were or are distributors and/or independent contractors for SOH in the State of Illinois(the "Illinois Litigation").   Generally, in the Illinois Litigation, the Illinois Plaintiffs alleged, among other things, that individuals, who were, or are distributors for SOH and/or classified as independent contractors, are owed back pay, employment benefits, contributions to retirement plans and compensation for work-related expenses, because SOH allegedly misclassified those individuals as independent contractors, rather than employees.   On or about December 10, 2008, SOH and Snyder's filed a Motion to Dismiss or, in the Alternative, to Transfer Venue, asserting, among other things, that pursuant to the applicable distributor agreements between each of the Illinois Plaintiffs and SOH, the action was improperly commenced in the Northern District of Illinois.

In recognition of the choice-of-law and venue provisions in the distributor agreements between the Illinois Plaintiffs and SOH, on or about February 5, 2009, the Illinois Plaintiffs stipulated to dismiss their complaint in the Northern District of Illinois.   Thereafter, on the same date, the Illinois Plaintiffs filed a complaint with this Court against only SOH, entitled *Robert Davis, Michael Feltz and Mark Johns, individually and on behalf of all similarly situated individuals v. SOH Distribution Company, Inc.*, No. 1:CV-09-237.   The Illinois Plaintiffs raised similar claims to those alleged in the Illinois Litigation and sought to raise said claims under both Pennsylvania and Illinois laws.   Thereafter, on April 7, 2009, the parties jointly moved this Court for a stay of proceedings in order to provide the parties with sufficient opportunity to explore

alternative dispute resolution, including mediation (Dkt. 21).  The Court granted the joint motion

on April 8, 2009 (Dkt. 23).

On or about May 5, 2009, Plaintiff, Charlee Hargis ("Hargis"), filed a lawsuit against

SOH and G&A, purportedly on behalf of herself and all other individuals who were or are

distributors and/or independent contractors for Defendants in the State of California, in the

Superior Court of the State of California (the "California Litigation").   Generally, in the

California Litigation, Hargis alleged, among other things, that the individuals who were, or are

distributors for SOH or G&A and/or classified as independent contractors, are owed back pay,

employment benefits, and compensation for work-related expenses, because SOH and/or G&A

allegedly misclassified those individuals as independent contractors, rather than employees.  On

or about June 9, 2009, the California Litigation was removed by Defendants to the United States

District Court for the Central District of California pursuant to the Class Action Fairness Act and

thereafter, Defendants filed a Motion to Dismiss or, in the Alternative, Transfer.

## C.    The Settlement

The terms of the settlement between the parties is exclusively set forth in the Settlement

Agreement (Dkt. 57).  The Settlement Agreement is the product of lengthy and often contentious

negotiations over the course of many months.  *See* Declaration of Joel L. Lennen ("Lennen

Decl."), ¶¶ 5-12, Exhibit A; Declaration of Clayton D. Halunen ("Halunen Decl."), ¶¶ 5-18,

Exhibit B.

In approximately May, 2009, counsel for the Illinois Plaintiffs and Defendants agreed to

participate in mediation and the parties mutually selected Carol Wittenberg as the mediator.  Ms.

Wittenberg is an experienced mediator[2] based in the New York offices of JAMS and facilitated a day-long mediation session on June 30, 2009.  *See* Lennen Decl., ¶ 8; Halunen Decl., ¶ 9 .

During the mediation, Plaintiffs and Defendants were represented by experienced and capable counsel who vigorously advocated their respective clients' positions during the mediation and corresponding settlement negotiations.  Also, during the June mediation session, the parties agreed to have further discussions and specifically agreed that, as their claims were similar to the Illinois Plaintiffs, any settlement would have to also include the plaintiffs and counsel in the California Litigation and all similarly situated distributors for SOH and G&A throughout the country[3].  Thereafter, counsel for the Illinois Plaintiffs contacted counsel for Hargis in the California Litigation and they agreed to jointly work together to seek to reach a settlement with Defendants.

During the months after the June mediation session, the parties, through their counsel, continued discussions and negotiations regarding their respective claims and defenses and based upon the initial mediation session and the information exchanged, further evaluated the strengths and weaknesses of their respective claims and defenses.  The parties exchanged informal discovery as well as damage information during the interim period.  Counsel for all parties participated in numerous conference calls, and eventually determined that another mediation session was required and appropriate.  The second mediation session took place at the JAMS offices in New York on August 11, 2009, with Ms. Wittenberg acting as the mediator.  By the end

---

[2] Carol A. Wittenberg is a trained mediator with twenty-five years of experience. Ms. Wittenberg has mediated and arbitrated hundreds of employment disputes, including many collective and class action cases. She has served as a court-appointed special master or settlement arbitrator in numerous employment lawsuits. Ms. Wittenberg has co-authored books and articles regarding alternative dispute resolution in the employment law context.

[3] Prior to the June mediation session, counsel for the Illinois Plaintiffs had already advised counsel for SOH that the Illinois Plaintiffs planned to amend their Complaint to raise similar claims for the similarly situated distributors throughout the country.

of the mediation session, the parties reached a preliminary agreement on the basic terms of settlement. Lennen Decl., ¶ 10; Halunen Decl., ¶ 12.

On August 19, 2009, as agreed through the preliminary settlement, Hargis stipulated to transfer the California Litigation to this Court and, as a result, on August 27, 2009, the California Litigation was transferred to this Court. Pursuant to the preliminary settlement, the parties also jointly moved this Court to consolidate the two lawsuits (Dkt. 27). The Court granted the motion on September 16, 2009 (Dkt. 28). Thereafter, the parties continued to exchange information and documents and negotiate the final settlement terms, which resulted in the Settlement Agreement.

As part of the settlement process, and prior to finalizing the settlement, the parties engaged in confirmatory discovery to verify the representations that the parties made during the negotiation process, and while engaging in confirmatory discovery, the parties continued to negotiate the terms of the settlement. The hard fought nature of these negotiations is demonstrated by the fact that it took approximately nine months from the start of settlement discussions for the parties to reach a final settlement agreement. *See* Lennen Decl., ¶ 5; Halunen Decl., ¶ 5. In the end, the parties' determined and good-faith efforts to resolve the litigation resulted in a fair settlement which provides substantial benefits to all members of the Settlement Class. If approved, the proposed settlement, as set forth in the Settlement Agreement, will bring an end to the litigation on terms which provide tangible and reasonable benefits to all parties.

### D.   Claims

The operative complaint in this action is the Consolidated Second Amended Class and Collective Action Complaint ("Amended Complaint"), filed on April 14, 2010 (Dkt. 56). The Amended Complaint alleges, among other things, that SOH and G&A violated various federal and state wage related laws by misclassifying certain distributors and independent contractors as

independent operators, rather than employees.  All claims in the Amended Complaint relate to the same allegation that such distributors and/or independent contractors were improperly classified as independent operators, rather than employees.  Through their claims, Plaintiffs seek damages for back pay, overtime, holidays, meal, break and rest periods, employment benefits, contributions to retirement plans and compensation for work-related expenses, as well as related damages, penalties, fines, taxes, attorneys' fees and interest.  Plaintiffs allege, on their own behalf and on a class-wide basis, claims under the FLSA, various state law claims in each jurisdiction in which any of the distributors and/or independent contractors operate or operated, claims under ERISA, 29 U.S.C. §§ 1332, *et seq.*, and for unjust enrichment.

### E.   **Preliminary Approval**

On April 30, 2010, this Court entered an Order (a) granting the parties' joint motion for preliminary approval; (b) finding, on a preliminary basis, that the Settlement Agreement falls within the range of reasonableness; (c) conditionally certifying the Settlement Class and sub-classes; (d) appointing Robert Davis, Michael Feltz, Mark Johns, Richard Hozian, and Charlee Hargis as class representatives; (e) appointing the law firms of Halunen & Associates and Levin Fishbein Sedran & Berman as Co-Class Counsel for the Settlement Class, (f) appointing CAC Services Group, LLC as the Claims Administrator, and (g) approving Notice of Class Action Settlement using the forms attached to the Settlement Agreement (Dkt. 63).

### III.   **SETTLEMENT**

The full terms of the settlement are contained in the Settlement Agreement.  The settlement provides for a substantial cash recovery to all members of the Settlement Class and does so through a claims process that is fair and reasonable and does not unduly burden Settlement Class members.  Each Settlement Class member who has submitted a valid Claim

Form will receive a cash payment based on the amount of product they purchased from SOH and

G&A during the Applicable Recovery Period(s).  The settlement, as set forth in the Settlement

Agreement, treats all similarly situated Settlement Class members fairly and equally, as the

recovery of each Settlement Class member is based on the amount of product they purchased,

which correlates with their duration of service, the size of their route, the amount of alleged

overtime worked, and the amount of out-of-pocket expenses incurred by the member.  As

structured, the settlement ensures that a Settlement Class member who operated a larger route or

operated as a distributor for a longer period of time will receive a higher payment than a

Settlement Class member who operated a smaller route or operated for a shorter period of time.

Co-Class Counsel are all extremely experienced in class action litigation as well as the settlement

and claims process and believe that the proposed settlement, as set forth in the Settlement

Agreement, is a fair, adequate, uniform, and reasonable settlement and highly beneficial to the

Settlement Class.  *See* Halunen Decl., ¶¶ 19-20.

### A. <u>The Settlement Class</u>

Subject to approval by the Court, the Settlement Agreement covers all individuals who,

through a contract with a Defendant or otherwise, are or were contractually engaged and/or

otherwise operated as delivery drivers, distributors and/or independent contractors for SOH or

G&A, and who were classified as "independent contractors" or "independent operators"

(collectively, the "Covered Positions") anywhere in the United States at any time during the time

periods described in the Settlement Agreement (collectively, the "Applicable Recovery

Periods").  Additionally, the Settlement Class consists of the following sub-classes:

> (a)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position in the State of Illinois, the Applicable Recovery Period is from October 16, 2004 through and including the Preliminary Approval Date (i.e., April 30, 2010);

(b)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position in the State of California, the Applicable Recovery Period is from the date that is four years prior to February 4, 2009 through and including the Preliminary Approval Date;

(c)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position in the States of Alabama, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Iowa, Idaho, Indiana, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New Mexico, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Virginia, West Virginia, Wisconsin, or the District of Columbia, the Applicable Recovery Period is from the date that is three years prior to February 4, 2009 through and including the Preliminary Approval Date;

(d)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position in the States of Arizona, Texas, or Utah, the Applicable Recovery Period is from the date that is four years prior to February 4, 2009 through and including the Preliminary Approval Date;

(e)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position in the States of Kentucky or Montana, the Applicable Recovery Period is from the date that is five years prior to February 4, 2009 through and including the Preliminary Approval Date;

(f)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position in the States of Maine or New York, the Applicable Recovery Period is from the date that is six years prior to February 4, 2009 through and including the Preliminary Approval Date;

(g)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position in the State of Wyoming, the Applicable Recovery Period is from the date that is eight years prior to February 4, 2009 through and including the Preliminary Approval Date; and

(h)     For those individuals who, through a contract with SOH or G&A or otherwise, performed or perform in a Covered Position anywhere in the United States and who have a claim under or pursuant to the FLSA, the Applicable Recovery Period is from the date that is three years prior to February 4, 2009 through and including the Preliminary Approval Date.

## B.      Terms of The Settlement Agreement

The Settlement Class consists of 2,765[4] distributors throughout the United States. Declaration of Matthew Hanson ("Hanson Decl."), ¶¶ 6a; 12; Exhibit C.  The full terms of the settlement are contained in the Settlement Agreement.  Pursuant to the terms of the Settlement

---

[4]   Of the 2,797 known potential Settlement Class members 32 have opted out and 2,765 Settlement Class members remain.

Agreement, Defendants have agreed to pay a total of ten million dollars ($10,000,000) (the "Gross Settlement Sum") to settle and pay:

    (1)     The timely and valid claims of the members of the Settlement Class;

    (2)     Any applicable taxes owed on payments of settlement monies;

    (3)     The portion of penalties owed to the California Labor Workforce and Development Agency for settlement of claims for penalties under the California Labor Code § 2699, the California Private Attorneys General Act of 2004 ("PAGA");

    (4)     The costs and fees of the Claims Administrator;

    (5)     Plaintiffs' attorney's fees, costs, and litigation expenses, as approved by the Court; and

    (6)     The enhanced awards to the Settling Named Plaintiffs for their services as class representatives, as approved by the Court.

Lennen Decl., ¶ 14; Settlement Agreement, § 4. Defendants have agreed to deposit the Gross Settlement Sum in a segregated settlement account at a qualified United States bank within fifteen (15) court days following the "Effective Date." Settlement Agreement, § 4.1.

        Also, pursuant to the Settlement Agreement, the "Net Settlement Sum" is the Gross Settlement Sum less the "Proposed Attorney's Fees," "Proposed Litigation Expenses," the "Proposed Enhanced Awards" and the fees and costs of the "Claims Administrator." A percentage of the Net Settlement Sum is to be allocated, on a pro rata basis, to all the members in the Settlement Class who submitted a valid Claim Form pursuant to the provisions of Sections 8 and 9 of the Settlement Agreement. Also, an additional percentage of the Net Settlement Sum is to be allocated, on a pro rata basis, to certain members of the Settlement Class, who submitted a valid Claim Form and who, through a contract with a Defendant or otherwise, performed in a "Covered Position" in the State of California, to compensate those individuals for the release of additional wage and hour claims and remedies available under the laws of California, and also, is

to be used to make the PAGA payment, pursuant to the provisions of Sections 8 and 9 of the Settlement Agreement.

If Co-Class Counsel's fee petition and the motion for enhanced award for the Settling Named Plaintiffs are granted by the Court, the total amount of money to be allocated among the class members is approximately $7,438,242.   The average participating Settlement Class member will receive a payment of approximately $2,646.

In addition, the Settlement Agreement provides for the following:

- Each individual member of the Settlement Class, few of whom could afford to litigate this case on their own, may file a claim that will provide a cash benefit to that member;

- Opt-out rights for those members of the Settlement Class who may want to pursue individual claims; and

- No portion of the $10,000,000.00 Gross Settlement Sum will revert to SOH or G&A, instead, any unclaimed portion of the Gross Settlement Sum will be donated to The Employee Rights Advocacy Institute for Law and Policy, a charitable organization under Section 501(c)(3) of the Internal Revenue Code.

*See* Settlement Agreement, §§ 4.1, 8.5, 8.8.

All of the Settling Named Plaintiffs have reviewed and approved each and every term of the Settlement Agreement.  *See* Declarations of Davis, Feltz, Johns, Hozian, and Hargis (Exhibit D) ("Plaintiffs' Decls."). In particular, each Settling Named Plaintiffs consulted with his or her attorneys and considered all of the possible outcomes of the litigation, and independently concluded that the Settlement Agreement is a satisfactory outcome for their claims. Plaintiffs' Decls.  The Settling Named Plaintiffs, as typical and adequate settlement class representatives, have approved the Settlement Agreement as a fair, reasonable, and adequate resolution to the actions.  *Id.*

## C.      Release Provisions in the Settlement Agreement

In exchange for the consideration provided by SOH and G&A, all class members who do not submit a timely Request for Exclusion shall become members of the Settlement Class and, assuming that the Settlement Agreement is approved by the Court, shall be subject to the release of claims set forth in the Settlement Agreement.   Settlement Agreement, § 10.   The release covers:  (1) the claims alleged, or which could have been alleged, in the "Actions," as amended; (2) any claim for unpaid wages, overtime or benefits, including, but not limited to, pension benefits, or for missed meal, break or rest periods, based on the Settlement Class members' alleged misclassification as independent contractors while performing services for Defendants in a Covered Position; (3) any claim for improper deductions from payments to the members of the Settlement Class while performing services for Defendants in a Covered Position or for failure to reimburse expenses that were incurred by Settlement Class members while performing services for Defendants in a Covered Position; (4) any claim for failure to make accurate payments that are derivative of, or in any way related to, any wage and hour, overtime, benefit or other claims based on the Settlement Class members' alleged misclassification as independent contractors; (5) any claim allegedly arising from the Settlement Class members' alleged misclassification as independent contractors while performing services for Defendants in a Covered Position; and (6) any penalty, interest, taxes or additional damages or costs which arise from or relate to the claims described in (1) through (5) above under applicable federal, state or local laws, statutes or regulations (collectively, the "Released Claims").   Settlement Agreement, § 10.1.

Notwithstanding the foregoing, for Settlement Class members outside of the State of California, the Released Claims do not include claims under the FLSA unless a member of the

Settlement Class affirmatively opts-in to the settlement by submitting a Claim Form.[5] Settlement Agreement, § 10.3. The Settlement Agreement also provides, however, that the "Final Approval Order" to be issued by the Court shall provide that those members of the Settlement Class who fail to either submit a timely Claim Form or a timely Request for Exclusion shall have forfeited, released and waived all rights to bring or participate in a collective or class action under the FLSA, although any such individual will retain the right to seek to bring an individual action alleging violations of the FLSA. Settlement Agreement, § 10.4.

### D.   Attorneys' Fees

Attorneys' fees and costs for Plaintiffs' counsel are subject to approval by the Court and will be paid from the Gross Settlement Sum. Co-Class Counsel have submitted a request for attorneys' fees and expenses to this Court simultaneously herewith. The enforceability of the Settlement Agreement is not contingent on the amount of attorneys' fees or costs actually awarded. The parties did not discuss the amount of attorneys' fees and costs until after all of the material terms of the settlement were agreed upon, and there is no agreement as to the specific value of attorneys' fees in accordance with *Prandini v. National Tea Co.* 557 F.2d 1015, 1017 (3d Cir. 1977); Halunen Decl., ¶ 22. However, the parties have agreed that the amount of attorney's fees awarded shall not exceed 25% of the Gross Settlement Sum and the requested amount of expenses shall not exceed $21,000. Furthermore, SOH and G&A have agreed not to oppose a

---

[5] Generally, if individuals do not opt-in to an FLSA action by filing a written consent, they are not bound by the outcome of the collective action and may seek to bring a subsequent private action. *Jones v. Case's Gen. Stores*, 517 F.Supp.2d 1080, 1085 (S.D. Iowa 2001). However, in California, the state legislature has enabled California plaintiffs to bring FLSA claims though the procedural mechanisms of state law, which benefits plaintiffs in certain ways, including an opt-out mechanism which results in larger classes. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F.Supp.2d 898 (C.D. Cal. 2005). Therefore, members of the Settlement Class from California who do not expressly opt-out of the settlement are protected by California law and, as a result, all such members who did not expressly opt-out also released their claims under the FLSA. *See Tomlinson*, 359 F.Supp.2d at 900.

motion for said amounts or less.  Lennen Decl. ¶ 17; Halunen Decl., ¶ 23; Settlement Agreement, § 5.1.

### E.    Exclusion and Objection Rights

Every member of the Settlement Class was provided with the opportunity to opt-out of the Settlement Class.  Halunen Decl., ¶ 27; Settlement Agreement,  ¶ 8.8.  The opt-out period deadline was July 14, 2010, and as of that date the Claims Administrator received thirty-two (32) Requests for Exclusion, which represents only 1.14% of the sent Notices.  Hanson Decl., ¶12.  Members of the Settlement Class were also given an opportunity to file an objection to the settlement, and only one "objection" was received by July 14, 2010.[6]  Halunen Decl., ¶ 26; Hanson Decl., ¶ 13.  The lack of substantive objections demonstrates the overwhelming agreement of the Settlement Class with the terms of the Settlement Agreement and establishes their support therefore.

### F.    Enhanced Compensation for the Class Representatives

The parties have agreed that the Settling Named Plaintiffs will receive an enhanced award for their efforts in pursuing the litigation.  These individuals include Robert Davis, Michael Feltz, Mark Johns, Richard Hozian, and Charlee Hargis.  Each Settling Named Plaintiff will receive an enhanced award of $7,500 as compensation for the time and efforts they expended on behalf of the Settlement Class.[7]  Halunen Decl., ¶ 28; Settlement Agreement, § 6.1.

### G.    Order Preliminarily Approving the Settlement

On April 30, 2010, this Court preliminarily approved the Settlement and authorized the Claims Administrator to serve notice of the settlement to the Settlement Class. (Dkt. 63.)

---

[6] The potential objection is a one page letter from a Settlement Class member who also submitted a Claim Form.  Although the letter purports to be an objection, the individual failed to identify an objection to the settlement.  Rather, he only objected to the claims raised in the Complaint.  Halunen Decl., ¶ 26.
[7] The reasonableness of the enhanced award is addressed in Section IV.B.

In the Order granting preliminary approval of the settlement, the Court found that the settlement memorialized in the Settlement Agreement "falls within the range of reasonableness." (Dkt. 63, ¶ 2.)  This Court also preliminarily found that "for settlement purposes only, that the Settlement Class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure." (Dkt. 63 ¶4.)   In approving the plans of notice, the Court found that the proposal satisfied the requirements of the FLSA, Rule 23, and due process, and was "the best notice practicable under the circumstances." (Dkt. 63 ¶8.)

## H.   Class Notice of the Proposed Settlement

The Settlement Agreement provides a comprehensive plan by which notice of the settlement was to be disseminated to prospective members of the Settlement Class by U.S. Mail and internet publication.  Specifically, the Settlement Agreement prescribes a plan by which the Claims Administrator would serve the Notice upon members of the Settlement Class by First Class U.S. Mail.  *See* Settlement Agreement, § 8.3; Halunen Decl., ¶ 24; Hanson Decl., ¶ 6.  The Settlement Agreement further provides that Co-Class Counsel, through the Claims Administrator, shall establish and maintain the website, www.IOlitigation.com, at which the information about the settlement is posted, including a complete copy of the Settlement Agreement and Notice. The website also contained an electronic form that allowed Settlement Class members to request a Claim Form and a Request for Exclusion form.  Hanson Decl., ¶ 7.

The notice plan previously approved by this Court has been fully implemented.  After this Court granted preliminary approval, SOH and G&A provided the court-appointed Claims Administrator, CAC Services Group, LLC, with a database containing the names, known phone numbers, and mailing addresses of Settlement Class members.  Lennen Decl., ¶ 13; Hanson Decl., ¶ 6a.  The Claims Administrator verified the mailing addresses against the National

Change of Address system (NCOA), which updates the addresses for all persons who had moved in the previous four years and who had filed a change of address with the U.S. Postal Service. Hanson Decl., ¶ 6a.

Beginning on May 28, 2010, the Claims Administrator mailed the approved Notice, Claim Form, Request for Exclusion, and self-addressed envelope to each of the specifically identified Settlement Class members. Hanson Decl., ¶ 6b. In addition, the Claims Administrator set up a toll-free telephone number answered by the Claims Administrator's staff to: (1) address and fulfill notice package requests, and (2) answer Settlement Class member questions about the notice packet. Hanson Decl., ¶ 5c. In addition, Settlement Class members had the ability to request a Claim Form and a Request for Exclusion form through the website. Hanson Decl., ¶ 7.

## IV.   ARGUMENT

### A.   It is Appropriate to Certify the Settlement Class as a National Class for Purposes of the Settlement[8]

The benefits of the settlement can be realized only through the certification of a Settlement Class. The Supreme Court of the United States has now emphatically confirmed the viability of such settlement classes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). So, too, have the federal appeals courts. *See e.g., In re Prudential Ins. Co. Of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) ("Prudential II"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

In this Circuit, there is a preference for class certification: "[t]he interests of justice require that in a doubtful case … any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) *cert. denied*, 424 U.S.

---

[8]   The arguments regarding the appropriateness of class certification set forth herein are advanced by Plaintiffs. Defendants do not object to said arguments for the purposes of settlement only.

16

946 (1985); *see also Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527 (W.D. Pa. 1994) (Ambrose, J.) (same); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 2007 U.S. Dist. LEXIS 85466 (M.D. Pa. Nov. 19, 2007) (same).  In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under scrutiny of the trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 202, 205 (S.D.N.Y 1995) (*quoting In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979*), cert. denied*, 452 U.S. 905 (1981)).  Here, there is no likelihood of abuse of the class action device, and the settlement is fair, reasonable and adequate and is subject to approval by this Court.

Federal Rule of Civil Procedure 23 and Section 216(b) of the FLSA govern the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class. All the criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.  Thus, a settlement class should be certified where the four requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy, are satisfied and when one of the three subsections of Rule 23(b) is met and when the two requirements of Section 216(b) of the FLSA are met, all of members of the Settlement Class are 'similarly situated,' and the members of the Settlement Class have opted-in to the action.

Certification of the Settlement Class is appropriate here as it is requested to effectuate a settlement of claims against SOH and G&A.  Given the fact that the Settlement Class size is 2,765 members, the numerosity requirement is met.  The commonality and typicality requirements also are easily satisfied, as the claims of the Settling Named Plaintiffs and all Settlement Class members are premised on the same theory of employment misclassification, and damages for back pay, overtime, pension benefits and work-related expenses.  Further,

adequacy of representation is assured as the Settlement Class is represented by legal counsel who have a wealth of experience in complex employment litigation such as this, and there is no conflict between the interests of the class and the class representatives.  Halunen Decl., ¶ 19.

Certification of the Settlement Class under Rule 23(b)(3) for settlement of  damages claims is also appropriate because all of the claims for relief are premised upon the predominating common issue of SOH's and G&A's conduct in classifying its distributors as independent contractors.  There is no danger that individual variations in the type or magnitude of damage suffered by individual Settlement Class members will affect predominance, as the Settling Named Plaintiffs have the same type of damage claims and seek the same type of relief as other members of the Settlement Class.

Moreover, resolution of the litigation by a class settlement is superior to individual adjudication of the Settlement Class members' claims for compensatory relief.  In particular, the Settlement Agreement provides members of the Settlement Class with an ability to obtain predictable, certain, and definite compensatory relief promptly, and also the right to "opt-out" of the settlement entirely.  By contrast, individualized litigation carries with it great uncertainty, risk, and costs and provides no guarantee that an injured Settlement Class member will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement would also relieve judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against SOH and G&A.

Additionally, the class should be certified by this Court because all of the requirements necessary for FLSA class certification have also been met as the members of the Settlement Class are all "similarly situated" and have opted-in to the settlement.

### 1.   **The Elements of Rule 23(a) Are Fully Satisfied**

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the named plaintiffs must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see, e.g.*, *Barnes v. American Tobacco Co*., 161 F.3d 127 (3d Cir. 1998); *Prudential II*, 148 F.3d at 308–09; *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975). Here, Plaintiffs contend that all four elements are clearly satisfied.

### a)   **Numerosity**

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable." Numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Jackson v. SEPTA*, 260 F.R.D. 168, 187 (E.D. Pa. 2009); *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007); *Osgood v. Harrah's Entm't, Inc*., 202 F.R.D. 115, 122 (D.N.J. 2001)

In the present case, Plaintiffs seek certification of a Settlement Class of virtually all persons who operated as distributors for SOH or G&A during the applicable statute of limitations periods.  There are several thousand Settlement Class members throughout the United States and Plaintiffs allege that there cannot be any dispute, therefore, that the proposed Settlement Class meets the numerosity requirement.

**b)** <u>**Commonality**</u>

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class."  A common question is one which "arises from a common nucleus of operative facts regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984) (quotation omitted); *Flannick v. First Union Home Equity Bank*, 134 F. Supp. 2d 389, 400 (E.D. Pa. 2001).  The rule does not require that all questions be common or even that common questions predominate. *Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979); *Kuhn v. Philadelphia Electric Co.,* 80 F.R.D. 681 (E.D. Pa. 1978)  Plaintiffs are not required to show that all class members' claims are identical to each other, and any difference between the proposed class members, "while arguably relevant as defenses to liability, do not change the fact that this class action raises the same basic claim and shares common questions of law." *Mack v. Suffolk County,* 191 F.R.D. 16, 23 (D. Mass. 2000). Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See Prudential II*, 148 F.3d at 310; *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *In re Telectronics Pacing Systems* 172 F.R.D. 271, 280 (S.D. Ohio 1997); *Asbestos School Litigation*, 104 F.R.D. at 429; *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977); *see also In re Agent Orange Product Liability Litigation,* 818 F.2d 145 (2d Cir. 1987).

Applying these principles, Plaintiffs allege that it is evident that the commonality requirement of subsection (a)(2) is met here.  The central issues posed by this litigation is Defendants' decision to classify their distributors as independent contractors and the Defendants' alleged failure to compensate those distributors under the law.  Given the presence of these

common questions central to this litigation, Plaintiffs contend that Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met.

### c)   <u>Typicality</u>

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims … of the class."  As the Third Circuit described in *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994):

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. [Citation omitted.] The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees. [Citation omitted].
>
> Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or. . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' [Citations omitted.] Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. [Citation omitted.]

*Id*. at 57–58.

The requirement of this subdivision of the Rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to ensure that the interests of unnamed class members will be protected adequately by the named class representative.  *See e.g., General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982); *Prudential II*, 148 F.3d at 311; *Bogosian v. Gulf Oil Corp*., 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litigation*, 104 F.R.D. at 429–30.  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in

litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g.*, *General Tel. Co.*, 457 U.S. at 156-157 (1982); *Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984); *Caruso v. Celsius Insulation Resources, In*c., 101 F.R.D. 530, 534 (M.D. Pa. 1984); *Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979); *Telectronics*, 172 F.R.D. at 280. The typicality requirement has been liberally construed by the federal courts. *See*, *e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Even if there are "pronounced factual differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances." *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 84 (E.D. Pa. 2003); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2008) (holding that "while the Court must ensure that the interests of the plaintiffs are congruent, the Court will not reject the plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future.")

In the present case, the claims of the Settling Named Plaintiffs and each of the other Settlement Class members are predicated on the alleged failure of SOH and G&A to properly classify their positions. All Settlement Class members signed substantially similar contracts with Defendants that describe how the members were, or are, classified by Defendants. Also, Plaintiffs contend that Defendants' alleged liability for the resulting damage to each Settlement Class member does not depend on the individual circumstances of the Settlement Class members. Rather, the Amended Complaint alleges that Defendants' conduct in classifying its distributor position was unlawful and gives rise to liability to all persons who, like the Settling

Named Plaintiffs, were injured in that Defendants did not reimburse them for out-of-pocket expenses or pay overtime, back pay, benefits and other compensation.

In order to prevail, therefore, the Settling Named Plaintiffs and each member of the Settlement Class will be required to make the same factual presentation and legal argument with respect to the common questions of liability cited earlier, regardless of the individual circumstances which may affect their ability to prove individual causation and amount of damages on an individualized basis. Accordingly, the common issues necessarily share "the same degree of centrality" to the Settling Named Plaintiffs' claims such that in litigating the liability issues the Settling Named Plaintiffs reasonably can be expected to advance the interests of all absent Settlement Class members in a favorable determination with respect to each such issue. "[F]actual differences will not render a claim atypical if the claim arises from the same event or *practice or course of conduct* that gives rise to the claims of the class members and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (emphasis added); *see also Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987), *overruled in part on other grounds by Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). Accordingly, Plaintiffs assert that the typicality requirement of the Rule is easily satisfied.

### d) __Adequacy__

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit consistently has ruled that:

> Adequate representation depends on two factors: (a) the Plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss,* 745 F.2d at 811 (*quoting Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 247); *see also* Prudential *II*, 148 F.3d at 312. These two components are designed to ensure that absentee class members' interests are fully pursued.

### (i)   The Class Has Been More Than Adequately Represented by Co-Class Counsel

The existence of the elements of adequate representation are presumed and "[t]he burden is on the defendant to demonstrate that the representation will be inadequate." *Asbestos School Litigation,* 104 F.R.D. at 430, citing *Lewis v. Curtis,* 671 F.2d 779 (3d Cir. 1982); *Grasty v. Amalgamated Clothing & Textile Workers Union*, 1988 WL 61742, at *2 (E.D. Pa. June 10, 1988); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) (quoting 2 Newberg on Class Actions, §7.24 at pp. 7-81, 2-82).

In the present case, Plaintiffs state that the presumption of adequate representation cannot be rebutted.  With respect to the issue of adequacy of counsel, the Court may take judicial notice of the fact that Co-Class Counsel have substantial experience in litigating complex class actions. This Court has previously reviewed the credentials of Co-Class Counsel, and appointed them as co-lead and liaison, respectively.   Co-Class Counsel have been lead counsel in numerous complex class action cases.   Co-Class Counsel have and will continue to aggressively litigate these actions.   Co-Class Counsel has taken significant discovery that has enabled them to negotiate an advantageous settlement on behalf of the Settlement Class members.   Co-Class Counsel negotiated the Settlement Agreement from a position of knowledge and strength, and as advocates for the entirety of the Settlement Class.   Halunen Decl., ¶¶ 5-18.   Thus, Plaintiffs assert that the adequacy requirement is satisfied for class certification under Rule 23 of the Federal Rules of Civil Procedure.

### (ii)    The Class Representative's Interests Are
###         Not  Antagonistic to Those of the Class

Plaintiffs assert that here is nothing to suggest that the Settling Named Plaintiffs have significant interests antagonistic to those of the absent Settlement Class members in the vigorous pursuit of the Settlement Class claims against SOH and G&A. *See Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("gauging the adequacy of representation requires an assessment whether the class representatives have interests antagonistic to those of the class they seek to represent"); *Beck v. Maximus, Inc*., 457 F.3d 291, 296 (3d Cir. 2006) ("The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent.") (quotation omitted).  Here, both the Settling Named Plaintiffs and other members of the Settlement Class are equally interested in detailing to this Court that they were allegedly misclassified as independent contractors, and are further committed to obtaining appropriate compensation from SOH and G&A.  They have obtained an advantageous settlement that treats all Settlement Class members in the same fashion and provides real value to all members of the Settlement Class.  The class representatives assisted counsel pre-filing by bringing the claims to light, providing narratives of the relevant facts, providing documents to support their claims, and collecting information from other putative class members to show an alleged uniform policy or practice.  During the confirmatory discovery phase, the class representatives produced volumes of documents (including their tax records for the past 5 years), identified documents to request from Defendants, and provided sworn statements of their expected testimony.   During the settlement phase of litigation, the class representatives were in contact with counsel at all times to discuss the demands, offers, and counter-offers.  The class representatives were available by telephone during the mediation sessions, and ultimately approved the final Settlement Agreement.

25

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiffs now turns to consideration of the factors which, independently, justify class treatment of this action under subdivision 23(b)(3) of the rule.

## 2.   The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

In addition to satisfying Rule 23(b), Plaintiffs must show that the Settlement Class falls under at least one of the three subsections of Rule 23(b). Here, Plaintiffs assert that the Settlement Class qualifies under Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187 (3d Cir. 2001); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 115 (W.D. Pa. 2003).   Common questions must predominate over individual questions.   Indeed, a court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978).   Rule 23(b)(3) does not require that all questions of law or fact be common.   *See Telectronics*, 172 F.R.D. 287–88 (S.D. Ohio 1999); *Safran v. United Steelworkers of America,*

132 F.R.D. 397, 404 (W.D. Pa. 1989).  In this regard, courts generally focus on the liability issues and if these issues are common to the class, common questions are held to predominate over individual questions.

Here, Plaintiffs contend that the Settling Named Plaintiffs raised common issues of fact and law that predominate over any individual issues that might arise.  The Settlement Class members' claims for relief are founded upon common legal theories related to the singular issue of Defendants' decision to classify them as independent contractors.  Thus, all the Settlement Class members have an interest in the adjudication of what is, far and away, the single issue of law and fact dominating this litigation—e.g., whether or not class members were properly classified as independent contractors.  Once that issue is determined on a class-wide basis, the remaining issues focus on relatively minor matters such as the amount of overtime worked and the amount of reimbursed out-of-pocket expenses each member sustained.

The other requirement of Rule 23(b)(3) that must be satisfied is the superiority requirement (i.e., that a class action suit provides the best way of managing and adjudicating the claims at issue).  "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re The Prudential Ins. Co. of America Sales Practices Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998), *cert. denied, Knell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999); *see also Lester v. Percudani*, 217 F.R.D. 345, 353 (M.D. Pa. 2003)("The superiority inquiry under subsection (b) centers on whether a class action provides the most efficient forum for disposing of plaintiff's claims.")  Considerations of judicial economy underscore the superiority of the class action mechanism in this case. *See Prudential II*, 148 F.3d at 316 n.57.

Here, Plaintiffs assert that settlement on a class basis also is superior to individual litigation and adjudication because settlement provides Settlement Class members with prompt compensation for their alleged damages.  By contrast, compensation resulting from continued litigation is highly uncertain and may not be received, if at all, before lengthy trial and appellate proceedings are complete.  In addition, the settlement, as set forth in the Settlement Agreement, obviously removes the overwhelming and redundant costs of individual trials.

Accordingly, the settlement, as set forth in the Settlement Agreement, renders a class action superior to other potential avenues of recovery for the Settling Named Plaintiffs and the other members of the Settlement Class.  Therefore, the settlement of these actions presents the paradigmatic example of a dispute that can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights.  Wright, Miller & Kane, Federal Practice & Procedure, Civil 2d §1754.  At the same time, the Settlement Agreement fully preserves the due process rights of each individual member seeking relief.  In sum, the requirements of Rule 23(b)(3) are satisfied and we can next examine the requirements for collective action certification under the FLSA.

### 3. The Requirements Necessary for FLSA Class Certification Have Been Met

Section 216(b) of the FLSA sets forth certain criteria that need to be met in order to maintain a collective action under the FLSA.  29 U.S.C. § 216(b).  Specifically, for a collective class to proceed under the FLSA, the proposed class must satisfy two requirements: (1) all of the class members must be 'similarly situated,' and (2) class members must opt-in to the law-suit. *Id.*; *Stanislaw v. Erie Indemnity Co.*, 2009 U.S. Dist. LEXIS 13812, 2009 WL 426641, *1 (W.D.

Pa. Feb. 20, 2009) (citing *Sperling v. Hoffman-LaRoche, Inc.*, 862 F.2d 439 (3d. Cir 1988); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009); *Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. May 26, 2009); *Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009).

"Although the FLSA does not define 'similarly situated,' the phrase contemplates individuals 'employed under the same terms and conditions.'" *Woodard v. Fed Ex Freight East, Inc.*, 2008 U.S. Dist. LEXIS 11919, 250 F.R.D. 178, 190-91 (M.D. pa. Feb 19, 2008) (citing 2 Les A. Schneider & J. Larry Stine, *Wage and Hour Law: Compliance and Practice* § 20.19.50); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 378-81 (3rd Cir. 2007). In addition, proposed class members are deemed to be "similarly situated" when they advance similar claims and seek substantially the same form of relief. *Craig v. Rite Aid Corporation*, 2009 U.S. Dist. LEXIS 114785, *8 (M.D. Pa. Dec. 9, 2009); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 51 (3d Cir. 1989) (overruled on other grounds); *Garcia v. Freedom Mortg. Corp.,* 2009 U.S. Dist. LEXIS 103147 (D.N.J. Nov. 2, 2009); *Plummer v. General Electric Co.*, 93 F.R.D. 311, 312 (E.D. Pa. 1981).

In this case, Plaintiffs contend that the Settlement Class members are all "similarly situated" for the purposes of collective action certification under Section 216(b) of the FLSA for several reasons. First, the issues at the center of this litigation are the same for all of the Settlement Class members. Indeed, all of the Settlement Class members claim that they have been misclassified by Defendants as independent contractors, rather than employees. In addition, the Settlement Class members are also similarly situated because all of the Settlement Class members signed similar contracts with Defendants and operated in similar positions. Third, the Settlement Class members are substantially similar because, in order to prevail in a

lawsuit against Defendants, all of the Settlement Class members would be required to make the same factual presentation and legal argument to the Court with respect to the common questions of liability that have been asserted against Defendants.

Ultimately, Plaintiffs assert that certification is appropriate under Section 216(b) of the FLSA because notice has been given to prospective Settlement Class members, and all participating members of the Settlement Class have expressly consented to participate in the class by submitting to the Claims Administrator in writing their consent to become members of the Settlement Class through the Claim Form.  *See* Settlement Agreement, § 8.5; Hanson Decl., ¶ 11;  *see also De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306-307 (3d Cir. 2003); *Craig v. Rite Aid Corp*., 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009).

Accordingly, the members of the Settlement Class are all "similarly situated" for purposes of Section 216(b) and certification of a collective action is appropriate under the FLSA. In addition, since the Settlement Class should also be certified under Rule 23 of the Federal Rules of Civil Procedure, this Court should certify the Settlement Class.

### B.       The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved by the Court

The proposed settlement of a class action should be approved where, as here, it is "fair, reasonable and adequate." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F. 3d 283, 316 (3d Cir. 1998); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); *Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 726 F.2d 956, 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

It is well-established that there is an overriding public interest in resolving litigation through settlement and this is particularly true in class actions.  *See In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 at 534–535 (3d Cir. 2003); *In re GMC Pick-Up Truck Fuel*

*Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995) (holding that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *Austin v. Pa. Dept. of Corp.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1985) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to "an overriding public interest."); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992); *In re Prudential Sec. Inc. Limited Partnership Litig.,* 163 F.R.D. 200 (S.D.N.Y. 1995).  Federal courts have repeatedly and consistently recognized a universal and long-standing "strong" public policy favoring the settlement of civil actions.  *See e.g. Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981); *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts. . . ."); *see also Bradburn Parent Teacher Store, Inc. v. 3M,* 513 F. Supp. 2d 322, 327 (E.D. Pa. 2007) (noting that "the law generally favors settlement in complex or class action cases for its conservation of judicial resources."); *Meijer, Inc. v. 3M*, 2006 WL 2382718, *9 (E.D. Pa. Aug. 15, 2006) (same).

The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial. *Ehrheart v. Verizon Wireless,* 609 F.3d 590 (3d Cir. 2010).  These economic gains multiply when settlement also avoids the costs of litigating class status -- often a complex litigation within itself.  Furthermore, a settlement may represent the best method of distributing damage awards to injured plaintiffs, especially where litigation would delay and consume the available resources and where piecemeal settlement could result in the complete exhaustion of defendant's resources. *See id.*

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to

rewrite the parties' settlement agreement nor to try the case by resolving the issues a settlement may leave unresolved. *In re Remeron Direct Purchaser Antitrust Litig.* No. Civ. 03-0085 FSH, 2005 WL 2230317, at *16 (D.N.J. Sept. 13, 2005); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 534–35 (D.N.J. 1997), *aff'd*, 148 F.3d. 283 (3d Cir. 1998); *see Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir. 1974); *Bullock v. Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979). Thus, "'[t]he temptation to convert a settlement hearing into a full trial on the merits must be resisted.'" *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1315 (3d Cir. 1993) (*quoting Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir. 1987)). Although districts court have broad discretion, significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2007 WL 4570918, at *3 (E.D. PA Dec. 28, 2007); *Petruzzi's, Inc. v. Darling-Deleware Co., Inc.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995).

Courts have taken a common sense approach toward approval of class action settlements that fall within a "range of reasonableness." *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (noting that the range of reasonableness with respect to a settlement "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 242 (3d Cir. 2001); *Serrano v. Sterling Testing Sys., Inc.*, 2010 U.S. Dist. LEXIS 44779 (E.D. Pa. May 7, 2010). A district court should guard against demanding too large a settlement because a settlement is a compromise –the yielding of the highest hopes in exchange for certainty and resolution. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806.

Here, this Court is asked to determine only whether the Settlement Agreement is within a range that reasonable and experienced attorneys could accept, considering all the relevant risks and factors of litigation. *See Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 96 F.R.D. 632, 642 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d. Cir. 1983); *see also Serrano v. Sterling Testing Sys., Inc.,* 2010 U.S. Dist. LEXIS 44779 (E.D. Pa. May 7, 2010)*; In re Remeron Direct Purchaser Antitrust Litig*., 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

## 1.   The Settlement is Entitled to an Initial Presumption of Fairness

A district court should "apply an initial presumption of fairness when reviewing a proposed settlement where: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig*., 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F3d. 201, 232 n.18 (3d Cir. 2001)).

These four elements are met here.  First, the record demonstrates that the negotiations occurred at arm's length.  Settlements negotiated by experienced counsel that results from arm's-length negotiations are generally entitled to deference from the court.  *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) (affirming district court's finding "that the presumption of fairness properly attached because the settlement resulted from intense arms-length negotiations between experienced counsel"); *In re Auto. Refinishing Paint Antitrust Litig.*, 2003 WL 23316645 at *6 (E.D. Pa. Sep. 5, 2003); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (holding that "[a] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel," *citing Hannahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)); *Lake v. First Nationwide Bank*,

156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith"). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

The settlement with SOH and G&A is the result of many months of hard-fought, arm's-length negotiations between Plaintiffs' counsel and Defendants' counsel, all experienced and capable lawyers. Lennen Decl., ¶ 1; Halunen Decl., ¶ 21. Carol Wittenberg, an experienced and capable mediator, facilitated the mediation, and her assistance and oversight demonstrates that the negotiations were arms-length at all times. Plaintiffs' counsel and Defendants' counsel vigorously advocated their respective clients' positions in the settlement negotiations and were prepared to litigate the case fully if no settlement was reached. The Settlement Agreement does not grant unduly preferential treatment to the Settling Named Plaintiffs or to any segments of the Settlement Class, and it does not provide excessive compensation to Co-Class Counsel. *See* Lennen Decl., ¶ 17; Halunen Decl., ¶ 23.

Second, Co-Class Counsel have engaged in confirmatory discovery. Only after Co-Class Counsel reviewed and analyzed thousands of pages of documents, conducted interviews and other investigations, was the settlement reached. *See* Halunen Decl., ¶¶ 13-15. Nothing in the course of the negotiations or in the substance of the proposed Settlement Agreement presents any reason to doubt its fairness. *See* Halunen Decl., ¶ 5-12.

Third, the Settlement Agreement was negotiated on behalf of the Settlement Class by a negotiating team of several experienced counsel (Clayton Halunen, Charlie Schaffer, Ira Spiro, Shawn Wanta, Michael Johnson, and Charles Firth) who vigorously prosecuted the class claims against SOH and G&A and are experienced in similar litigation. Halunen Decl., ¶ 6.

The fairness of the settlement process and of the Settlement Agreement itself also was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 787-88; *Fisher Brothers v. Phelps Dodge Industries, Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("[t]he professional judgment of counsel involved in the litigation is entitled to significant weight."); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").   The Settlement Agreement was negotiated by counsel experienced in complex class action litigation.   Accordingly, the Settlement Agreement was not the product of collusive dealings, but, rather, was formed as a result of the vigorous prosecution of the case by the experienced and qualified counsel.

Fourth, objections were due July 14, 2010, and to date, only one possible "objection" has been received.[9]   Halunen Decl., ¶ 26; Hanson Decl., ¶ 13.   This represents only a significantly small fraction of the 2,765 Settlement Class members.[10]   The lack of objections demonstrates that the Settlement Class overwhelmingly supports the settlement; hence, the proposed settlement, as set forth in the Settlement Agreement, is entitled to a presumption of fairness.

## 2.   **The Settlement Satisfies All of the Relevant Criteria for Approval**

There are nine factors a court should consider to determine if a settlement should be approved as "fair, reasonable and adequate." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 785; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004);

---

[9] As previously noted, the one possible objection is a one page letter from a Settlement Class member who also submitted a Claim Form to receive a share of the settlement.  While the letter purports to be an objection, the author failed to identify an objection to the settlement, but instead objected to the claims raised in the Complaint.  *See* Halunen Decl., ¶ 26; Hanson Decl., ¶ 13.

[10] *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D. N.Y. 2005) (court certified settlement despite 21% opt-out rate because 21% opt-out rate was similar to those found in other cases).

*Black v. Metso Paper USA*, Inc., 2010 U.S. Dist. LEXIS 9723 (M.D. Pa. Feb. 4, 2010). These factors include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975).

### a)  The Complexity, Expense and Likely Duration of the Litigation

The first factor "captures 'the probable costs,' in both time and money of continued litigation." *In re Cendant*, 264 F.3d at 233 (*quoting In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 812). A court must balance the settlement against the time and expense of achieving a potentially more favorable result through further litigation. Where the complexity, expense and likely duration of the litigation are significant, a court should view this factor as weighing in favor of settlement. *Lenahan,* 2006 WL 2085282, at *12 (*citing In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. at 536).

Continued litigation of these actions would be long, complex and expensive, and a burden to court dockets and all the parties. Continuing this litigation against SOH and G&A would entail a lengthy and expensive battle and it is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in settlement negotiations. Additionally, Defendants would assert various defenses, and a jury trial (assuming the actions proceeded beyond pretrial motions) might well turn on class questions of proof, making the outcome of

such trial uncertain for all parties.   Moreover, even after trial would be concluded, there would very likely be one or more lengthy appeals.  Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.,* 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Approval of the Settlement Agreement will guarantee the Settlement Class a substantial cash payment.  Without approval of the Settlement Agreement, the Settling Named Plaintiffs would face the likely prospect of expensive and protracted litigation against Defendants. Balancing the complexities of this litigation, the substantial risk, expense and duration of protracted litigation against SOH and G&A and likely appeal, Co-Class Counsel firmly believes the settlement represents a very good resolution of this litigation against SOH and G&A.

### b)      The Reaction of the Class to the Settlement

The second factor "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d. at 318.  The fact that only one "objection" was filed and the overwhelming majority of the Settlement Class has not filed objections to the Settlement Agreement "strongly militates a finding that the settlement is fair and reasonable."   *In re Pressure Sensitive Labelstock,* 584 F. Supp. 2d at 701 (*quoting In re Linerboard Antitrust Litig.,* 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004)); *see In re Cendant,* 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."); *In re Auto. Refinishing Paint Antitrust Litig.*, 2007 WL 4570918, at *4 ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the Settlements.").[11]

---

[11]  Even when some class members object to a proposed class settlement, it is neither uncommon nor fatal to settlement approval. In fact, numerous class settlements have been approved over objections from many class

The Class Notice required objections by July 14, 2010.  In response to the Notice, only one possible objection was received by this deadline.  This number represents less than 0.04% of the 2,765 Settlement Class members.  The substantial lack of objections demonstrates overwhelming class approval of the terms of the Settlement Agreement.

c)      **The Stage of the Proceeding and**
        **Amount of Discovery Completed**

The third factor "captures the degree of case development that the class counsel [had] accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant,* 264 F.3d at 235 (*quoting In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 813).

As detailed above, after a lengthy pre-filing investigation and motions to dismiss, Co-Class Counsel entered settlement negotiations with Defendants.  The negotiations were wide-ranging and adversarial, involving numerous in-person meetings and countless telephone conferences taking place over a period of many months.  These negotiations were conducted by experienced and knowledgeable counsel, who had the benefit of the wealth of fact discovery. *See* Halunen Decl., ¶¶ 13-19.

Thus, any concern regarding the vulnerability of a settlement claim where the parties had not been put to the test of a vigorous adversarial process in shaping their position at the bargaining table noted by the Supreme Court in *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)*,* is not an issue here.  To be sure, Co-Class Counsel conducted extensive confirmatory discovery, mediation, and negotiations.   Additionally, the parties utilized an experienced mediator, Carol Wittenberg, to conduct several mediation sessions.  Through this process, Co-

---

members. *See, e.g. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (holding that 29 objections in the 281-member class "strongly favors settlement."); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir. 1974) (affirming approval of settlement even though more than 20% of the class objected).

Class Counsel obtained an understanding of key issues that allowed counsel to evaluate the strength and weaknesses of the claims and defenses. As the Third Circuit has observed, "post-discovery settlements are more likely to reflect the true value of the claim and be fair." *Bell Atl. Corp.* 2 F.3d at 1314. Co-Class Counsel has devoted significant time and work investigating the class claims and the defenses raised by SOH and G&A. Through an arm's-length discovery process, negotiations were handled with a strong understanding of all the legal and factual contentions. Thus, given the status of the litigation, this factor favors final approval.

d) **The Risks of Establishing Liability and Proving**
      **<u>Damages and Maintaining the Class Action Through Trial</u>**

The fourth through sixth factors "examine what the potential rewards (or downside) of the litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 814. The factors include (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through trial. *Girsh*, 521 F.2d at 157; *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 701 (M.D. Pa. 2008). As one court explained:

> In examining [the risks of establishing liability], the Court need not delve into the intricacies of the merits of each side's arguments, but rather may "give credence to the estimation of the probability of the success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action."

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (*quoting Lachance v. Harrington,* 965 F. Supp. 630, 638 (E.D. Pa. 1991)). "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often

misplaced." *West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

Co-Class Counsel believe that they would prevail at trial (which Defendants strongly dispute), but recognize that complex litigation against large companies with able defense counsel has inherent risks.  In the ongoing litigation, Defendants would continue to raise certain defenses that they have previously argued ardently.  Those defenses include: (1) a decision issued by the Internal Revenue Service determining that the SOH and G&A distributors are independent operators, not employees; (2) the uncertainties of state wage laws, some of which are less favorable to employees than others; (3) the terms and conditions of the parties' written distributor agreements; (4) the manner of actual operation by the various independent operators; and (5) the possibility that Plaintiffs may not be able to maintain a certified class through trial.  Defendants also argued defenses that the prerequisites to maintaining a class do not exist for various reasons, and would, if needed, do everything in their power to prevent the Settling Named Plaintiffs from attaining class certification.  Moreover, assuming that the Settling Named Plaintiffs overcame the hurdles of proving liability, they would still be faced with proving actual damages against Defendants.  *See* Halunen Decl., ¶ 20.  Thus, the significant risks of establishing liability, establishing damages, and maintaining the class action through trial favors final approval.

### e)      The Ability of the Defendants to Withstand a Greater Judgment

The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant*, 264 F.3d at 240.  Before entering into the Settlement Agreement, Co-Class Counsel engaged in extensive arm's-length negotiations with Defendants.  Co-Class Counsel believe that the Settlement Class has obtained

the last dollar available in settlement and that Defendants were unwilling to settle for anything more, with which the Defendants strongly agree.  Lennen Decl., ¶ 15.

In any event, a court "is not in an advantageous position to gauge the ability of the Defendants to pay a larger judgment" and as "'there is inevitably a measure of speculation involved in this determination,'" given the "'built-in limitations of this analysis,'" this factor should be weighed only moderately in this analysis.  *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D.N.J. 2002) (*quoting In re Cendant Corp. Litig.*, 264 F.3d at 241); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (finding no error where district court concluded that defendant's "ability to pay a higher amount was irrelevant to determining the fairness of the settlement.")  The fact that a defendant has the financial resources to pay a larger judgment does not weigh against approval of a settlement when considered along with the substantiality of the settlement within the context of the litigation.  For example, in *Lazy Oil*, the district court concluded that the fact that a settling defendant had the financial resources to pay a larger judgment did not weigh against settlement "in light of the risks that [p]laintiffs would not be able to achieve any greater recovery at trial." *Lazy Oil v. Witco Corp.*, 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997).

Here, the uncertainties present in the current economic climate further support approval of the settlement.  SOH and G&A have agreed to pay substantial sums to the Settlement Class which provides the Settlement Class with certainties in a time when the economy presents extreme risks in every industry beyond the control of either party.  Even if Settling Named Plaintiffs had proceeded to trial and won, and then prevailed in appeals, a successful collection of the full judgment is not a certainty in any case.  In light of these facts, including the real possibility of recovering less or nothing at all, this factor weighs in favor of final approval.

  **f)**  **The Range of Reasonableness of the Settlement in Light**
      **of the Best Possible Recovery and in Light of All of the**
      <u>**Attendant Risks of Litigation**</u>

Both the eighth and ninth *Girsh* factors evaluate the reasonableness of the Settlement

Agreement. "While the court is not obligated to ensure that the proposed settlement is in the best

interest of the class members by reference to the best possible outcome, it must also recognize

that settlements typically represent a compromise and not hold counsel to an impossible

standard." *In re Atena Inc. Sec. Litig.*, No Civ. A. MDL1219, 2001 WL 20928, at *6 (E.D. Pa.

Jan. 4, 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806

(noting that "after all, settlement is a compromise, a yielding of the highest hopes in exchange

for certainty and resolution"); *Lazy Oil*, 95 F. Supp. 2d at 338–39 (stating that a court "should

not make a proponent of a proposed settlement 'justify each term of settlement against a

hypothetical or speculative measure of what concessions might have been gained; inherent in

compromise is a yielding of absolutes and abandoning of highest hopes.'") (*quoting Cotton v.

Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). In addition, "a future recovery, even one in excess

of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the

benefits of the proposed Settlement at this time." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491,

501 (W.D. Pa. 2003).

Co-Class Counsel have concluded that the Settlement Agreement results in a significant

portion of the potentially recoverable damages from Defendants. Here, the Settlement Class is

discrete in that the parties are able to readily identify class members, and estimate the amount of

damages that each class member allegedly sustained during the class period. Co-Class counsel

conducted an extensive damages calculation that included 36 factors to establish the best

possible recovery, and have balanced that figure against the risks of litigating a nationwide class

action under the laws of different states, as well as the FLSA.  Halunen Decl., ¶ 20.  Co-Class Counsel is satisfied that given the highest hopes of the Plaintiffs, and the very high risks of this litigation, the Settlement Agreement is the best possible outcome for the Settlement Class.  *See* Halunen Decl., ¶¶ 7, 20.

Settlement Class members are dealing with an economic downturn that has had a substantial negative impact on their income.  The timing of this settlement brings certainty and resolution to Settlement Class members, who will receive payments at a time when they need income.   In light of all the foregoing, the Settlement Agreement is unquestionably fair, reasonable, and adequate.  Given the history and posture of these actions, as well as the litigation risks discussed above, the Settlement Agreement will bring an end to this litigation and provide substantial recovery and relief to a Settlement Class that has been waiting for resolution of their claims for years.

g)      **The Notice Plan Satisfied the Requirements of the Federal Rules of Civil Procedure and Due Process**

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is finally approved by a court.  In accordance with this Court's preliminary approval, notice of the Settlement Agreement was provided to all identified Settlement Class members and interested parties by U.S. Mail and Internet at http://www.iolitigation.com.  A Notice was mailed directly to each such Settlement Class member.  The details of the notice program are described in the Hanson Declaration that is attached hereto.  Hanson Decl., ¶¶ 5-8.

On or before May 21, 2010 the Claims Administrator received from the Defendants a electronic list of 2,797 names and address of persons identified as potential Settlement Class members (the "Class Member List").  The Class Member List was updated using the National Change of Address System which updates the addresses for all persons who had moved in the

43

previous four years and who had filed a change of address with the U.S. Postal Service.  On or before May 28, 2010, the Notice, Claim Form and Request for Exclusion were printed, personalized, and inserted into a #10 window envelope (the "Notice Packet") and the Notice Packet was provided to the Settlement Class members in the English language.  Hanson Decl., ¶ 6.

On or before May 28, 2010, the 2,793 Notice Packets were mailed by the Claims Administrator, using first-class postage, at the U.S. Post Office in Minneapolis, Minnesota.  Further, on or before, June 29, 2010, the Claims Administrator mailed 1,623 "Reminder Postcards" using first class postage, to all Settlement Class members who had not already returned either a Claim Form or Request for Exclusion.  Hanson Decl., ¶ 6d.

Six Notice Packets have been returned to the Claims Administrator by the U.S. Postal Service with forwarding addresses.  The Class Member List was then updated with the new addresses and Notice Packets were re-mailed to such Settlement Class members at each new address.  In addition, 294 Notice Packets have been returned to the Claims Administrator by the U.S. Postal Service without forwarding addresses.  For those Notice Packets, on a weekly basis, an address search was completed resulting in 185 new addresses.  The Claims Administrator caused the Class Member List to also be updated with the new addresses and a Notice Packet was re-mailed to such Settlement Class members at each of the new addresses.  Additionally, through phone correspondence or other correspondence, the Claims Administrator has continued to re-mail the Notice Packets leaving only 88 Notice Packets that remain classified as undeliverable.  Hanson Decl., ¶ 10.

Under Rule 23(e) and due process, adequate notice must be given to class members and potential class members to enable them to make an intelligent choice as to whether to opt-out of

the class.  *Prudential II*, 148 F.3d at 326-27; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 700 (M.D. Pa. 2008).  However, the Supreme Court has not held that Rule 23 or due process requires the accomplishments of delivery of actual notice to every class member in every case, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985), but the provision of "notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 319 (U.S. 1950).  Nevertheless, the notice plan used here was developed with the thought of providing the most comprehensive notice possible, and notice that is, in fact, believed to have actually reached nearly all of the class members.

The federal courts have sanctioned a variety of public notices to ensure that absent members are aware of the class and are capable of making an informed choice.  Through publications, the courts have found Rule 23(e) and due process are satisfied.  As part of its analysis of the Settlement Agreement, this Court must determine whether the Notice was adequate.  *See Zimmer Paper Products, Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 88 (3d Cir. Pa. 1985) ("[t]he proper elements of notice to class members are a concern in almost every class action"); *Meijer, Inc. v. 3M*, Civ. N. 04-5871, 2006 WL 2382718 at *9 (E.D. Pa. Aug. 14, 2006).

In this case, Defendants provided the Claims Administrator, as requested, with the last-known mailing address and known telephone numbers for the Settlement Class members.  Defendants also provided the Claims Administrator with the social security number of any Settlement Class member if that information was required to locate the member.  In addition to sending notice via U.S. Mail and internet publication, the parties also mailed a reminder post card to each Settlement Class member who had not already submitted a Claim Form.  The

reminder post card notified the individual of the deadline to submit claims, and provided instructions on how to obtain a duplicate Claim Form or Request for Exclusion.  *See* Hanson Decl. Exhibit 2.  Thus, the parties' efforts to disseminate the Notice were more than adequate.  *See Id.* at *10; *see also Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) (holding that "[f]irst-class mail and publication consistently have been considered sufficient to satisfy the notice requirements of Rule 23(d)(2) and Rule 23(e) for advising class members.").

### C.        Named Plaintiffs are Entitled to a Separate Award for Their Efforts

Class Counsel also recommends that the Court approve enhanced awards to the five Settling Named Plaintiffs: Robert Davis, Michael Feltz, Mark Johns, Richard Hozian, and Charlee Hargis.  The requested enhanced award is $7,500.00 for each Settling Named Plaintiff.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 145 (E.D Pa. 2000) (*quoting In re So. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)).  "Incentive awards are typically awarded to class representatives for their often extensive involvement with a lawsuit and courts in this Circuit have traditionally granted requests for these awards."  *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008) (granting incentive awards totaling $30,000.00 to each class representative; the court noted: "The Class Representatives not only conferred benefits on all of the Class members, but also risked jeopardizing their existing relationships with their suppliers of automotive refinishing paint products.").   It is particularly appropriate to compensate class representatives with incentive awards where, as here, they have actively assisted Co-Class Counsel in their prosecution of the

litigation for the benefit of a class. *See Tenuto v. Transworld Systems, Inc.*, Civ. A. No. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002); *see also In re Linerboard*, 2004 WL 1221350, at *18 ("[T]he class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly"); *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94-CV-3564, 2002 WL 188569 (E.D. Pa. Dec. 4, 1998).

Courts recognize that serving as a named plaintiff involves a "substantial time commitment to the litigation." *In re Revco Sec. Litig.*, Nos. 851, 89CV593, 1992 U.S. Dist. LEXIS 7852, at *21 (N.D. Ohio May 6, 1992). This commitment can require "investments of … money and effort." *Collins v. Pension Benefit Guaranty Corp.*, No. CA 88-3406-AER, 1996 WL 335346, at *6 (D.D.C. June 7, 1996); *see also Equal RightsCenter v. Washington Metro. Area Tr. Auth.*, 573 F. Supp. 2d 205, 122 n.10 (D.D.C. 2008) (stating that when deciding the propriety of incentive awards, the court may consider factors such as the amount of time and efforts plaintiffs expended in aiding litigation.).

The services provided by the individuals who acted as the class representatives in these actions (the Settling Named Plaintiffs) should not go without financial recognition. While service as a representative plaintiff is not a profit-making position, the law recognizes that it is appropriate to make modest awards in recognition of the services that such plaintiffs perform in successful class litigation. *See, e.g., J/H Real Estate*, 951 F. Supp. 63, 66 (E.D. Pa. 1997); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503-04 (N.D. Miss. 1996); *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 451 (W.D. Pa. 1987); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *In re: Domestic Air Transportation Antitrust Litig*, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993); *Tenuto v. Transworld Systems, Inc.*, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002); *In Re. Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993).

The Settlement Agreement recognizes this principle by providing an award to the Settlement Named Plaintiffs. The Settling Named Plaintiffs were the principal catalyst to achieving this result for the Settlement Class. They were subject to discovery and conferences with their attorneys. *See* Plaintiffs' Decls.; *see also In re Plastic Tableware Antitrust Litig*., 2002 WL 188659 (E.D. Pa. Dec. 4, 1998).  Consistent with the law and the terms of the Settlement Agreement, it is appropriate to make a modest "special award" in the amount of $7,500 to each such individual.  *See, e.g. In re Graphite Electrodes Antitrust Litig*., MDL No. 1244, Master File No. 00-cv-1857 (E.D. Pa. Sep. 8, 2003) ($80,000);*In Re Revco Securities Litig*., 1992 WL 118800 (N.D. Ohio May 6, 1992) ($200,000 plus an additional $50,000, for a total of $250,000, out of $29.75 million fund).

Co-Class Counsel believe, based on their assessment of the facts and circumstances of this case, that the requested enhanced awards in the amount recommended in the Settlement Agreement are fully warranted.  The Settling Named Plaintiffs worked closely with Co-Class Counsel throughout the investigation, prosecution and settlement of the claims in this litigation. Their participation in this litigation directly contributed to the benefits to the Settlement Class as a whole.  Among other things, the Settling Named Plaintiffs reviewed the complaints and other litigation documents, provided discovery, and provided several sworn statements.  Equally important, is the fact that the Settling Named Plaintiffs worked their network of SOH and G&A distributors to generate enough interest and participation in this lawsuit that Defendants realized the substantial risk of litigating the claims.  In short, the Settling Named Plaintiffs committed significant time to this litigation on behalf of the Settlement Class.  *See* Halunen Decl., ¶ 28.

The Notice to the Settlement Class members informed them that the Settling Named Plaintiffs would be entitled to enhanced awards in accordance with the Settlement Agreement in

the amount of $7,500 each.  No member of the Settlement Class objected to this provision of the Settlement Agreement.

## V.     **CONCLUSION**

For the foregoing reasons, the parties respectfully request that this Court enter an Order: (1) granting final approval of the Settlement Agreement and its terms; (2) certifying, for settlement purposes only, the Settlement Class and sub-classes as set forth in the Settlement Agreement; (3) awarding attorney fees and costs in the amount of $2,521,000; (4) approving a separate enhanced award for each of the Settling Named Plaintiffs in the amount of $7,500.00; (5) entering final judgment dismissing the actions and all claims set forth therein with prejudice; and (6) authorizing the Claims Administrator to make all necessary disbursements according to the terms of the Settlement Agreement.

The Settlement Agreement is the result of extensive arm's-length negotiations by experienced and informed counsel on both sides, reached after litigation and analysis and the completion of substantial discovery.  Thus, the parties were fully informed of their respective risks and advantages when they reached the Agreement.  Based on this extensive information, the parties believe the Settlement Agreement to be fair, reasonable, uniform and adequate, and warrants the Court's final approval.

Dated: August 16, 2010

/s Clayton D. Halunen                                                 /s Adam M. Shienvold

Clayton D. Halunen                                                  Adam M. Shienvold

Shawn J. Wanta    Eckert Seamans Cherin & Mellott, LLC

Halunen & Associates    213 Market Street, Eighth Floor

80 South Eights Street    Harrisburg, PA  17101-2132

1650 IDS Center    Telephone: (717) 237-6000

Minneapolis, MN  55402    Facsimile: (717) 237-6019

Telephone: (612) 605-4098

Facsimile:  (612) 605-4099             – and –

– and –

/s Charles Schaffer
Charles Schaffer
Arnold Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street - Suite 500
Philadelphia, PA 19106-3697
Telephone: 215.592.1500
Facsimile: 215.592.4663

**CO-CLASS COUNSEL AND
ATTORNEYS FOR PLAINTIFFS,
ROBERT DAVIS, MICHAEL FELTZ,
AND MARK JOHNS**

– and –

/s Ira Spiro
Ira Spiro
11377 West Olympic Blvd., Fifth Floor
Los Angeles, CA  90064-1683
Telephone: 310.235-2468
Facsimile: 310.235.2456

– and –

/s Joseph J. Gigliotti
Joseph J. Gigliotti
Gigliotti & Gigliotti, LLP
434 East Chapman Avenue
Fullerton, CA 92832
Telephone: 714-879-1712
Facsimile: 714.879.3439

**ATTORNEYS FOR PLAINTIFF,
CHARLEE HARGIS**

/s Joel L. Lennen
Joel L. Lennen
Jeremy L. S. Samek
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Telephone:  (412) 566-6000
Facsimile (412) 566-6099

**ATTORNEYS FOR DEFENDANTS, SOH
DISTRIBUTION COMPANY, INC., AND
G&A SNACK DISTRIBUTING, INC.**

50